The PEOPLE of the State of Colorado, Petitioner-Appellee,

In the Interest of S.B., Minor Child,

And Concerning: N.B., Respondent-Appellant.

No. 85CA1128.

Colorado Court of Appeals, Div. III.

March 19, 1987.

Rehearing Denied April 23, 1987.

Certiorari Granted (N.B.) Sept. 8, 1987.

H. Lawrence Hoyt, Boulder Co. Atty., Greta Maloney, Asst. Co. Atty., Boulder, for petitioner-appellee.

Thorburn, Sakol & Thorne, Barre M. Sakol, Boulder, for respondent-appellant.

METZGER, Judge.

N.B. (father), appeals the summary judgment adjudicating his daughter S.B. dependent and neglected and its subsequent order declining to exercise further jurisdiction. We affirm.

At approximately 2:50 a.m. on November 16, 1984, S.B., then age three, was placed in the custody of the Boulder County Department of Social Services on a police hold after her mother, who had been previously divorced from the father and who had custody of S.B., was found beaten to death in the family home. The father, who was present at the scene, was arrested and charged with first degree murder.

After a placement hearing, legal custody of S.B. was continued with the Boulder County Department of Social Services, she was placed with a maternal aunt, and a petition in dependency and neglect was filed on November 28, 1984. The trial court granted the motion of S.B.'s maternal grandfather to be joined as a party, and at a hearing on December 19, 1984, S.B. was placed with her maternal grandfather and his wife in North Myrtle Beach, South Carolina.

Thereafter, the father filed a motion requesting appointment of an expert to assist him in the preparation for the adjudicatory hearing. The motion was denied.

On February 14, 1985, the People filed a motion for summary judgment. Attached affidavits stated that the father was being held without bond on charges of first degree murder. Attached to the father's response was an affidavit in which he stated that he was "willing to accept responsibility for the care of his daughter and/or to make arrangements to have relatives care for her," but which made no reference to specifics. The motion was initially denied.

On February 27, 1985, 91 days after filing of the petition in dependency and neglect, S.B., through her guardian ad litem, filed a motion to extend the time for the adjudicatory hearing. The trial court granted the extension of time on February 28, 1985. Subsequently, the father moved to dismiss the petition in dependency and neglect, arguing that, because the adjudicatory hearing was not held within the 90-day period required by § 19-3-106(1.3), C.R.S. (1986 Repl.Vol. 8B), dismissal was required. The trial court found that the extension of time was in S.B.'s best interests and denied the motion.

Thereafter, the trial court reconsidered its denial of the motion for summary judgment, and on March 8, 1985, it entered summary judgment adjudicating S.B. dependent and neglected.

At the conclusion of the dispositional hearing on July 15, 1985, the trial court approved a treatment plan and made it an order of the court. On August 12, 1985, the father filed a notice of appeal in this court.

On January 6, 1986, S.B.'s paternal grandfather filed a petition in the family court of Horry County, South Carolina, requesting that, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), the South Carolina court assume jurisdiction and grant permanent custody of S.B. to him. Thereafter, the People and S.B.'s guardian ad litem each filed a notice and motion pursuant to the UCCJA with both the Colorado and South Carolina courts requesting that the respective judges determine the appropriate forum for the determination of S.B.'s custody. On June 16, 1986, the Colorado court declined to exercise continuing jurisdiction in order to allow the South Carolina court to assume

jurisdiction. A supplemental notice of appeal was then filed appealing this order.

On July 2, 1986, the father petitioned the supreme court for a writ of prohibition, seeking to prevent the trial court from declining continuing jurisdiction; this request was denied. The father then sought a stay from the trial court, which also denied his request. On September 5, 1986, a motion for stay was filed in this court, and we granted the motion.

## I.

Father first contends that the trial court erred in extending the time for conducting an adjudicatory hearing or, in the alternative, erred in denying his motion to dismiss. He asserts that no adjudicatory hearing was held within 90 days and the trial court did not set forth specific reasons justifying the delay. We reject this contention.

Section 19-3-106(1.3), C.R.S. (1986 Repl. Vol. 8B) provides:

"Adjudicatory hearings concerning neglected or dependent children shall be held at the earliest possible time, but in no instance shall such hearing be held later than ninety days after the filing of the petition, unless the court finds that the best interests of the child will be served by granting a delay. If the court determines that a delay is necessary, it shall set forth the specific reason why such delay is necessary and shall schedule the adjudicatory hearing at the earliest possible time following the delay."

The trial court held that it was granting the motion to extend time because it was in S.B.'s best interests to do so. It found that nothing in the father's motion to dismiss suggested that it would be in S.B.'s interests to enforce the 90-day rule strictly. The court also found that it required additional time to consider the legal issues concerning the pending summary judgment motion.

■ Under these circumstances, we conclude that the trial court's grant of an extension of time for the adjudicatory hearing was based on a common sense interpretation of a highly unusual factual situation. Its findings satisfy the requirement of

§ 19-3-106(1.3), C.R.S. (1986 Repl.Vol. 8B); consequently, we decline to disturb its ruling.

In any event, dismissal is not the appropriate remedy. In addressing the issue whether failure to meet the 48-hour temporary custody hearing mandated by § 19-2-103, C.R.S. (1986 Repl.Vol. 8B) constituted a jurisdictional defect, our supreme court held that it was "contrary to the purposes of the Children's Code and possibly to the best interests of the children involved to hold that the hearing requirement is jurisdictional." *P.F.M. v. District Court*, 184 Colo. 393, 520 P.2d 742 (1974). We believe that reasoning to be appropriate here.

■ In reaching this conclusion, we note that the Children's Code is to be liberally construed to serve the welfare of children and the best interests of society. Section 19-1-102(2), C.R.S. (1986 Repl.Vol. 8B). Courts should seek to promote the spirit of a statute and not simply the letter of the law. *Bradley v. People*, 8 Colo. 599, 9 P. 783 (1886).

Under the circumstances here, a delay of one day is insufficient to invoke a rigid interpretation of the statutory requirements, particularly when the motion to continue was filed by S.B.'s guardian ad litem who was charged with protecting her best interests. The trial court did not err in refusing to dismiss this case.

## II.

The father next contends that the trial court erred when it entered summary judgment in favor of the People. He first argues that the issue whether a child is dependent or neglected is not a subject for summary judgment. We disagree.

■ The Colorado rules of juvenile procedure apply to dependency and neglect actions. Section 19-1-107, C.R.S. (1986 Repl.Vol. 8B). Such proceedings are civil in nature and, where not governed by the Colorado Rules of Juvenile Procedure or procedures set forth in the Children's Code, the Colorado Rules of Civil Procedure apply. C.R.J.P. 1; *see also People in Inter-*

*est of D.A.K.*, 198 Colo. 11, 596 P.2d 747 (1979). Therefore, C.R.C.P. 56, the summary judgment rule, may be applied in a dependency and neglect action. *See, e.g., People in Interest of K.A.J.*, 635 P.2d 921 (Colo.App.1981).

▪ The father further asserts that the fact of his incarceration constitutes a genuine issue of material fact sufficient to defeat an adjudication of dependency or neglect by summary judgment. We agree that incarceration of a parent cannot be the sole basis for an adjudication; however, under the circumstances here, the adjudication was proper.

▪ Prior to the adoption of the Children's Code, our supreme court held that a parent's felony conviction is not alone sufficient to work a forfeiture of parental rights. *Diernfeld v. People*, 137 Colo. 238, 323 P.2d 628 (1958). However, adjudications of dependency or neglect are not made as to the parents but, rather, relate only to the status of the child as of the date of the adjudication. *People in Interest of P.D.S.*, 669 P.2d 627 (Colo.App.1983). An action in dependency or neglect is designed to determine whether the child, for whatever reason, lacks the benefit of parental guidance, concern, protection, or support. *People in Interest of E.A.*, 638 P.2d 278 (Colo.1982).

In granting the motion for summary judgment and adjudicating S.B. dependent and neglected, the trial court made alternative findings. At the time of the entry of summary judgment, the father had been bound over for trial on charges of first degree murder, and was being held without bond. The trial court found that, if the father were convicted of causing the mother's death, S.B. would be dependent and neglected within the meaning of § 19–1–103(20)(b), C.R.S. (1986 Repl.Vol. 8B), because she "lacks proper parental care through the actions or omissions of the parent...." It also found that if the father were not convicted of causing the mother's death, S.B. is, nevertheless, dependent and neglected under § 19–1–103(20)(e), C.R.S. (1986 Repl.Vol. 8B) in

that she "is not domiciled with her parent ... through no fault of such parent...."

The record shows that the father made no attempt whatsoever before the adjudication to make any arrangements for his daughter's care. On the date of adjudication, he was being held without bond. After the adjudication, but before the dispositional hearing, the father pled guilty to second degree murder of S.B.'s mother, and received a sentence of twelve years.

▪ Consequently, we conclude that there was no genuine issue of material fact on the date of adjudication, and the trial court properly adjudicated S.B. dependent and neglected by way of summary judgment pursuant to either § 19–1–103(20)(b) or (e), C.R.S. (1986 Repl.Vol. 8B).

### III.

The father next contends that the trial court erred in refusing to appoint an expert witness to assist him prior to the adjudicatory hearing. He argues that, because an adjudicatory hearing may lead to the termination of the parent-child legal relationship, the appointment of an expert during the earlier proceeding is required. We disagree.

Section 19–11–107, C.R.S. (1986 Repl.Vol. 8B) provides that an indigent parent is entitled to the appointment of one expert witness whose reasonable fees will be paid for by the State of Colorado. However, this section is contained in Article 11 of the Children's Code, and refers exclusively to the termination of the parent-child legal relationship. Thus, it is not pertinent here.

▪ Although an indigent parent is entitled to have an attorney appointed in a dependency and neglect action, § 19–1–106(1)(d), C.R.S. (1986 Repl.Vol. 8B), and is entitled to various other due process rights, *see People in Interest of E.A., supra; Robinson v. People in Interest of Zollinger*, 173 Colo. 113, 476 P.2d 262 (1970), neither concern for fundamental fairness nor the Children's Code requires the appointment of an expert prior to a dependency and neglect adjudicatory hearing. Consequently, the trial court did not err when it denied

the father's motion for appointment of an expert prior to the adjudicatory hearing.

## IV.

Father next contends that the trial court erred in refusing to exercise continuing jurisdiction in this matter. This argument has two subparts.

## A.

Asserting that the pendency of an appeal divests the trial court of all jurisdiction in a case, father contends that the trial court was without jurisdiction to enter its order declining to exercise continuing jurisdiction over S.B. while his appeal of the adjudication was pending. Therefore, he contends, the trial court erred. We disagree.

 It is axiomatic that any action taken by a court when it lacks jurisdiction is a nullity. *McLeod v. Provident Mutual Life Insurance Co.*, 186 Colo. 234, 526 P.2d 1318 (1974). In general, the filing of a notice of appeal divests the trial court of jurisdiction. *Schnier v. District Court*, 696 P.2d 264 (Colo.1985). However, a trial court is not divested of jurisdiction to issue further orders relative to an order or judgment appealed from if such further orders are specifically authorized by statute or rule. *Odd Fellows Building & Investment Co. v. City of Englewood*, 667 P.2d 1358 (Colo.1983).

Section 19–3–115(4), C.R.S. (1986 Repl. Vol. 8B) imposes a duty on the trial court to review any order placing legal custody of a child with an individual, institution, or agency within 90 days of the original order and every six months thereafter. Disposition orders in dependency and neglect cases concern custody and placement of a child. *See* § 19–3–111, C.R.S. (1986 Repl.Vol. 8B). Disposition orders must be able to be adapted to the changing circumstances of both the child and the other parties to an action, and must be based upon the best interests of the child. Section 19–3–109(4), C.R.S. (1986 Repl.Vol. 8B).

In *People in Interest of C.A.K.*, 628 P.2d 136 (Colo.App.1981), *rev'd on other grounds*, 652 P.2d 603 (Colo.1982), this court held that, so long as a child remains in the status of a dependent and neglected child pursuant to a valid adjudication, the trial court has several placement options. We went on to say "implicit in each of these options, however, is the continuing jurisdiction of the court to supervise the custodian as well as the child." That holding thus recognizes and ratifies the duty and responsibility of the trial court to supervise continually both the child and the custodian pursuant to a placement order, and to make appropriate modifications at periodic intervals, if circumstances warrant.

 Accordingly, we hold that the trial court in this case did have jurisdiction to enter its order refusing to exercise continuing jurisdiction over the case. Sections 19–3–115(4), 19–3–111, and 19–3–109(4), C.R.S. (1986 Repl.Vol. 8B) require the trial court to maintain continuing supervision over both the child and the custodian. We agree with the trial court's reasoning that: "In this case, the ongoing welfare of a child is at stake, which cannot be placed on hold during the lengthy process of an appeal. Under the Children's Code, this court has a statutory duty to conduct periodic reviews and to issue further orders."

## B.

Alternatively, father contends that, even if the trial court did have jurisdiction to enter its order declining to exercise jurisdiction while the case appeal was pending, the trial court abused its discretion under the facts of this case in declining to exercise continuing jurisdiction. Again, we disagree.

This issue is governed principally by the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), § 14–13–101 et seq., C.R.S. Both South Carolina and Colorado have adopted the UCCJA. *See* S.C. Code Ann. § 20–7–782, et seq., (Law.Coop. 1976 as amended), and § 14–13–101 et seq., C.R.S. Section 14–13–104, C.R.S., which is identical to the South Carolina statute (S.C. Code Ann. § 20–7–788), states the conditions under which a court has jurisdiction to decide matters encompassed by the

UCCJA. It provides that the state must have been the child's "home state" for six months prior to the commencement of the pending proceedings. Alternatively, it authorizes the court to find that it would be in a child's best interests for a state to assume jurisdiction because the child has significant connections with that state and substantial evidence as to the child's present and future care is available there.

In this case, Colorado had been S.B.'s home state for six months prior to March 8, 1985, the date of the adjudication of dependency and neglect. Therefore, the Colorado court has jurisdiction over S.B. and her custodian.

However, South Carolina also has jurisdiction in this case. Section 14–13–104(1)(b), C.R.S. and S.C.Code Ann. § 20–7–788(a)(2) define "home state" as the state with which the child has the most significant connection and where there is substantial evidence concerning the child's present and future care. It is uncontroverted that S.B. has resided in South Carolina since December 19, 1984, and is attending school and receiving therapy there.

The general purposes of the UCCJA include an assurance that, ordinarily, litigation concerning the custody of a child take place in the state in which the child and his family have the closest connection, where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state. Section 14–13–102, C.R.S.

The trial court found that Colorado "may be a home state in statutory terms but, for all practical purposes, South Carolina is really the home state of the child." It further found that, as of the date of its order, S.B. had lived in South Carolina for a year-and-one-half; during that time she had been regularly attending school, and had been seeing a therapist. It concluded that it was "clear that S.B. should remain in her maternal grandparent's home, since, from the evidence presented at the review hear-

ing, she is doing exceptionally well in her present environment."

The trial court also noted that the Boulder County Department of Social Services was officially S.B.'s legal custodian and, in that capacity, supervised the dispositional plan approved by the court. Relative to that duty, the Boulder Department worked closely with the South Carolina Department of Social Services. The court found that the Boulder Department had no direct contact with S.B., but "was engaged in a cumbersome and costly process of conducting its supervision through the department of another state."

The record abundantly supports the trial court's findings and conclusions. Although it could have retained jurisdiction, we believe that the trial court did not abuse its discretion in declining to exercise continuing jurisdiction.

Judgment and orders affirmed.

VAN CISE, J., concurs.

BABCOCK, J., dissents.

BABCOCK, Judge, dissenting.

I respectfully dissent from Parts II and IV(B) of the majority opinion.

### A.

My reading of the applicable provisions of the Children's Code leads me to conclude that summary judgment is not applicable to a proceeding in dependency or neglect. A pervasive premise throughout the Children's Code is a recognition that an evidentiary hearing is mandated in such a proceeding. Among the provisions in which I find this principle implicit are § 19–1–103(20), C.R.S. (1986 Repl.Vol. 8B) (definition of neglect or dependency); § 19–1–104(1)(b), C.R.S. (1986 Repl.Vol. 8B) (jurisdiction); § 19–1–106(1)(b), C.R.S. (1986 Repl.Vol. 8B) (right to counsel); § 19–1–106(4), C.R.S. (1986 Repl.Vol. 8B) (right to jury trial); § 19–1–107, C.R.S. (1986 Repl. Vol. 8B) (procedure governing conduct of hearings); § 19–3–101, C.R.S. (1986 Repl. Vol. 8B) (petition initiation, preliminary investigation, and informal adjustment);

§ 19–3–102, C.R.S. (1986 Repl.Vol. 8B) (petition form and contents, which must include a warning that termination of the parent-child relationship is a possible remedy); § 19–3–103, C.R.S. (1986 Repl.Vol. 8B) (issuance and content of summons, which include a warning that termination of the parent-child relationship is a possible remedy); § 19–3–105, C.R.S. (1986 Repl.Vol. 8B) (appointment of a guardian ad litem); § 19–3–106, C.R.S. (1986 Repl.Vol. 8B) (adjudicatory hearing, findings, and adjudication), and §§ 19–11–101, et seq., C.R.S. (1986 Repl.Vol. 8B) (concerning termination of the parent-child legal relationship).

This requirement is most clearly revealed in § 19–3–106(1), C.R.S. (1986 Repl.Vol. 8B), which provides in pertinent part:

"At the adjudicatory hearing, which shall be conducted as provided in section 19–1–107, the court shall consider whether the allegations of the petition are supported ... by a preponderance of the evidence in cases concerning neglected or dependent children...."

This mandatory language, considered in the light of the statutory scheme, clearly establishes a parent's absolute right to an evidentiary hearing. *See Matter of Christina T.*, 590 P.2d 189 (Okla.1979) (under a similar statutory scheme, summary judgment is not applicable in a juvenile proceeding).

State involvement in a parent-child relationship affects parents' fundamental liberty interests. *See People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982); *see also Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Consequently, to hold, as does the majority, that a parent may be deprived of the right to an evidentiary hearing at the critical adjudicatory stage of a dependency or neglect proceeding raises substantial constitutional questions concerning denial of due process and equal protection of law. *See Matter of Christina T., supra; see also People in Interest of J.B.*, 702 P.2d 753 (Colo.App. 1985).

The purpose of summary judgment is to avoid a useless trial when no substantial controversy exists as to material facts or issues and the moving party is entitled to

judgment as a matter of law. C.R.C.P. 56. In contrast, the very nature of a dependency or neglect proceeding renders inapplicable the concept of summary judgment. *See Matter of Christina T., supra; see also In re Henson*, 77 Misc.2d 694, 354 N.Y.S.2d 774 (1974).

A proceeding in dependency or neglect cannot be resolved on pleadings alone. Responsive pleadings are not required, and denial of the allegations of the petition is unnecessary except with regard to certain jurisdictional matters. C.R.J.P. 8(a). A *petitioner's* motion for summary judgment adjudicating a child to be dependent or neglected is not a "defense or objection" under C.R.J.P. 8(b), and the burden of proving that the child is dependent or neglected is on the petitioner who seeks intervention into the family unit. Furthermore, the prevailing concern at all stages of a dependency or neglect proceeding is the child's best interests and welfare. *See In re People in Interest of M.M.*, 184 Colo. 298, 520 P.2d 128 (1974). Hence, resolution of this issue by summary judgment is inappropriate.

Even if I were to concede the propriety of summary judgment in a dependency or neglect proceeding, the summary judgment entered here was tantamount to a declaration that the child was dependent or neglected solely because of respondent's arrest and incarceration, contrary to the rule of *Diernfeld v. People*, 137 Colo. 238, 323 P.2d 628 (1958). *See also People in Interest of M.C.C.*, 641 P.2d 306 (Colo.App.1982), in which it was stated:

"Clearly it is *not* the law that before a child can be placed by a parent in temporary custody of a relative permission must be first obtained from the court. Nor is it the law that custody orders must issue, and that the court must appoint the person selected by the parent officially as the guardian.... It is well settled in this jurisdiction that evidence of the child's physical care, surroundings and well-being is competent and material evidence to the issues in a dependency action. If, through arrangements made by the parent, the child is being [or can be] properly cared for by those who have

a genuine interest in its welfare, the fact that the [parent] has obtained such help and has sought out and procured proper care for the child is evidence that the parent is not neglecting the child." (emphasis in original)

Here, although not required to do so, father denied the allegations in the petition and asserted by affidavit that he was willing to make arrangements with his relatives for the child's care. Prior to the filing of the motion for summary judgment, a favorable home study was completed concerning the child's paternal uncle and his wife, with whom the child had an established relationship, and who were willing to receive and care for the child indefinitely. This evidence was admitted at the temporary placement hearing held before entry of the summary judgment. The paternal grandparents and maternal grandmother appeared at the temporary placement hearing and also expressed willingness to care for the child.

Thus, questions remained whether arrangements could be made by respondent for the child's proper care and welfare. Furthermore, material issues of fact existed as to whether the child's best interests and welfare would be served by the entry of a decree adjudicating her to be dependent or neglected. Accordingly, it was error for the trial court to enter summary judgment adjudicating the child to be dependent and neglected. *See People in Interest of K.A.J.,* 635 P.2d 921 (Colo.App.1981).

### B.

It is undisputed that the trial court has primary jurisdiction over this case, *see* § 19–1–104(1)(c), C.R.S. (1986 Repl.Vol. 8B); § 14–13–104(1)(a), C.R.S., and that South Carolina has acquired ancillary "home state" jurisdiction pursuant to S.C. Code Ann. § 20–7–788 (Law.Coop.1976). Thus, the issue is whether the trial court abused its discretion when it declined in favor of South Carolina to exercise further jurisdiction over this dependency proceeding. *See McCarron v. District Court,* 671 P.2d 953 (Colo.1983). Under the unique circum-

stances here, I would hold that the trial court abused its discretion.

In determining this issue, the provisions of the Colorado Children's Code and the UCCJA must be construed *in pari materia* and in light of their express purposes. *See* § 19–1–102, C.R.S. (1986 Repl.Vol. 8B); § 14–13–102, C.R.S.; *E.P. v. District Court,* 696 P.2d 254 (Colo.1985); *McCarron v. District Court, supra.*

The purposes of the Children's Code, as stated in § 19–1–102(1), C.R.S. (1986 Repl. Vol. 8B), are:

"(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

"(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

"(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

"(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society."

The prevailing concern is the child's best interests and welfare. *In re People in Interest of M.M., supra.* However, determinations of what will best serve the interests and welfare of the child must be made in light of the countervailing rights and interests of both the parent and the child, *see People in Interest of E.A.,* 638 P.2d 278 (Colo.1982), and the pervasive public policy of the Children's Code to preserve and strengthen family ties. *See People in Interest of C.A.K.,* 652 P.2d 603 (Colo.1982); *In re People in Interest of M.M., supra.*

To further these goals, when a dependency decree does not terminate the parent-child relationship, the trial court must approve an appropriate treatment plan. Section 19–3–111(1), C.R.S. (1986 Repl.Vol. 8B).

The treatment plan represents an affirmative attempt by the state to preserve the parent-child relationship whenever possible. *People in Interest of C.A.K., supra.* Further, as stated in *People in Interest of M.C.C., supra:*

"The fact that a particular parent is incarcerated at the time of an adjudication of dependency or neglect may often render more difficult the crafting of a meaningful and workable plan. However, such single circumstance does not per se prohibit the creation and implementation of a treatment program appropriate for the goal the General Assembly had indicated it should achieve—the building or rebuilding of a healthy parent-child relationship."

In contrast, the pertinent objectives of the UCCJA are to avoid child custody conflicts with courts of other states and to promote interstate judicial cooperation. Under the UCCJA, to insure that the determination of custody is made by the court having the closest connection with the child and his family and having more readily available significant evidence concerning the child. Section 14–13–102(1), C.R.S. (1986 Repl.Vol. 8B); *Bakke v. District Court,* 719 P.2d 313 (Colo.1986); *E.P. v. District Court, supra.*

The persuasive analysis of the interrelationship between the UCCJA and a dependency proceeding in *Matter of Welfare of Mullins,* 298 N.W.2d 56 (Minn.1980), leads me to conclude that the trial court here abused its discretion. In *Mullins,* the child was adjudicated dependent in California following the conviction and incarceration of the father for murdering the mother. The California court determined that the child's best interests would be served by placement in the home of his maternal aunt and uncle in Minnesota, with courtesy supervision arranged between the California and the Minnesota welfare departments.

Following the father's parole, and on recommendation of the California welfare department, the California court ordered the child's removal from Minnesota and placed him with a paternal great aunt in California. The Minnesota foster parents then filed a petition in Minnesota for a finding of dependency or neglect, asserting that Minnesota, to the exclusion of California, was the child's "home state" or that the child had such "significant connections" with Minnesota as to afford Minnesota primary jurisdiction.

Affirming the trial court's dismissal of the petition, the Minnesota Supreme Court reasoned:

"We agree with the district court that the analytical distinction between custody decrees arising from divorce and those resulting from dependency supports the retention of primary jurisdiction by the state of California and precludes any assertion of primary jurisdiction by the state of Minnesota. Although dependency custody decrees are indeed included within the ambit of the UCCJA, the Act itself is largely intended to address the problems resulting from interjurisdictional divorce proceedings.... Unlike a dependency order, a typical divorce decree setting forth terms of child custody does not contemplate supervision by the issuing court. Thus, when the parties to the decree move out of state their nexus with that court attenuates. Should the need for modification or enforcement of the decree arise, once the child resides in the new locality for six months, the UCCJA permits a transfer of jurisdictions. The issuance of a divorce decree governing custody in one state followed by the move of the custodial parent to another state results in the new place of residence becoming the child's 'home state' for the purposes of the act. In contrast, a dependency adjudication involves a continuing relationship between the child and the court. The relationship does not attenuate over time but continues as the court periodically assesses possible reestablishment of the family unit. Both Minnesota and California recognize that one of the purposes of a dependency decree 'is to create a temporary remedy with the ultimate goal of returning the child to the natural parents.' ... Thus, the placement by the court of the child in another state has little bearing on the vitality of

the child's connection with that court. The relationship continues despite geography. The UCCJA's 'home state' theory of jurisdiction therefore bears little relevance in this context."

Home state jurisdiction is ordinarily preferred if modification of custody is in issue. *See Bakke v. District Court, supra.* However, the UCCJA does not contemplate blind obedience to home state jurisdiction; rather, the UCCJA allows a more flexible approach in unique cases such as this. *See* 9 Uniform Laws Annot. 114, *Uniform Child Custody Jurisdiction Act* (1979) (Commissioners' Prefatory Note); *Neger v. Neger,* 93 N.J. 15, 459 A.2d 628 (1983).

Although the child's residency in South Carolina has probably generated information relevant to ultimate disposition, the information is available to the Colorado court through the mechanisms of the UCCJA. Under that Act, Colorado may adduce the testimony of witnesses, the parties, and the child in South Carolina, order the appearance of parties outside the state, or request a court of record in another state to hold an evidentiary hearing on its behalf. Sections 14-13-119 and 14-13-120, C.R.S.; *see Matter of Welfare of Mullins, supra.*

Here, the father and the paternal grandparents, who have appeared in the trial court, reside in Colorado. Thus, this dependency proceeding involves a continuing relationship between the child and the court, and also among the child, the father, the paternal grandparents, and the maternal grandfather. *See* § 19-1-116, C.R.S. (1986 Repl.Vol. 8B). The trial court has adopted a treatment plan and has determined that the child's best interests will be served by her continuing, albeit restricted, relationship with her father, and paternal grandparents. Finally, the cost of supervision of this case would be substantially the same in either jurisdiction.

I agree that the ongoing welfare of the child is at stake and cannot be placed on hold during this appeal. Indeed, the trial court has effectively monitored the child's welfare during the pendency of this appeal. However, the discharge of its duty and responsibility to supervise continually the child and her family, including implementation of the treatment plan, does not include the entry of an order that totally abdicates this jurisdiction. Such an order constitutes an abuse of discretion.

This abuse of discretion is exacerbated by the maternal grandfather's South Carolina petition seeking legal custody of the child, which could be awarded by the Colorado trial court under § 19-3-111, C.R.S. (1986 Repl.Vol. 8B), termination of the parent-child legal relationship, and a decree of adoption. South Carolina statutes governing termination of parental rights differ significantly from our Children's Code in that they show little sensitivity to preserving family ties. *See* S.C.Code Ann. §§ 20-7-1560 to 20-7-1582 (Law.Coop.1976). For example, unlike Colorado law, which gives parents a right to counsel, *see* § 19-1-106(1)(b), C.R.S. (1986 Repl.Vol. 8B), appointment of counsel is discretionary with the South Carolina court. *See* S.C.Code Ann. § 20-7-1570 (Law.Coop.1976).

The grandfather's petition for a decree of termination and adoption in South Carolina, where a parent is not afforded the panoply of due process protections given parents in Colorado, smacks of forum shopping which, in my view, will result in interstate judicial conflict detrimental to the child's best interests. Such forum shopping contravenes the objectives of the Children's Code and the UCCJA, *see Matter of Welfare of Mullins, supra; Neger v. Neger, supra; see also Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), and leads this child into the interstices of the federal system.

Finally, I cannot condone the trial court's abuse of discretion in entering an order abdicating total jurisdiction over a dependency action during appeal. Absent our stay, the trial court's order could have led to a South Carolina decree terminating the parent-child relationship and awarding adoption to the maternal grandfather. In that event, any right of review in Colorado would have been hollow and meaningless at best and would have encouraged further

interstate conflict detrimental to the child's best interests.

I would reverse the summary judgment and set aside the trial court's order declining to exercise further jurisdiction over this dependency and neglect proceeding as an abuse of discretion.