**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**In the Interest of A.E., a Child, and Concerning R.H., Respondent–Appellant.**

**No. 94CA1901.**

Colorado Court of Appeals, Div. IV.

Feb. 22, 1996.

Meconi & Jackson, Rocco F. Meconi, Larry R. Bowling, Canon City, for Petitioner–Appellee.

Nancy L. Myers, Guardian Ad Litem, Salida.

Ernest F. Marquez, Salida, for Respondent–Appellant.

Opinion by Judge TAUBMAN.

R.H. (mother) appeals from a trial court judgment terminating the parent-child legal relationship between her and her child, A.E. We reverse and remand with directions.

After mother had been hospitalized several times for psychotic episodes, including one during which she attempted suicide, A.E. was adjudicated dependent and neglected upon mother's admission that A.E.'s environment was injurious to his health. The trial court adopted a treatment plan that required mother to obtain suitable housing, undergo a drug and alcohol evaluation, participate in therapy, and visit the child on a regular basis.

Several months later, the trial court returned legal and physical custody of A.E. to mother after problems developed at A.E.'s foster placement. Mother then took A.E. to Florida. When mother was hospitalized in Florida for mental illness, legal and physical custody of A.E. was returned to the Fremont County Department of Social Services (department), and the child was placed in foster care in Colorado.

Mother returned to Colorado, but failed to comply with the requirements of the treatment plan, which included consistent participation in both family therapy and psychiatric and chemical dependency treatment. On two occasions, mother required hospitalization for psychotic episodes and apparently continued her substance abuse.

On May 20, 1994, just over five months before the termination hearing, the juvenile court entered a permanency planning hearing order in which it found that "there is some probability that the child will be returned to the physical custody of his parent within six months." That court order also indicated that the department's plan for placement of the child was for the child to be returned to the home of a parent within six months. This order followed a review hearing on May 5, 1994, at which time the juvenile court praised mother for the progress she was making as discussed in the report from the department.

Nonetheless, on June 3, 1994, the department filed a motion for termination of the parent-child legal relationship.

At a scheduling conference on July 28, 1994, mother's attorney requested a several month continuance for the termination hearing so he would have adequate time to demonstrate mother's compliance with the treatment plan. During that hearing, mother's attorney indicated various witnesses he intended to call at the termination hearing.

Further, during that hearing the juvenile court advised mother that: "You should be doing your very best in between now and the time of the trial or the hearing that we'll conduct on October 24, and the more things that you do right, the better off your attorney will be in terms of trying to convince the court that I should not terminate parental rights."

The People adverted to the filing of a motion for summary judgment in their pretrial disclosure certificate filed August 19, 1994, but, at the pretrial hearing three days later, no discussion of such motion occurred. Instead, the discussion focused on when mother's counsel would file his pretrial disclosure certificate.

It was not until October 7, 1994, less than three weeks before the scheduled termination hearing, that the People filed their motion for summary judgment, together with one supporting affidavit. The People subse-

quently submitted additional supporting affidavits on October 13 and October 18, 1994.

The mother filed a one-page response to the People's summary judgment motion on October 19, asserting that summary judgment should be denied for various reasons. Among these, she maintained that she had not admitted any of the statutory criteria required for termination, that she was not required to support any contentions of material facts because the department has the burden of proof, and that she had the right to confront and examine the individuals whose affidavits were submitted in support of the summary judgment motion. She also contended that the department had not established the absence of genuine issues of material fact. Mother did not attach any affidavits with her response to the motion.

Finally, three days before the scheduled hearing on the termination of parental rights, on October 21, 1994, the People filed a notice of hearing regarding their motion for summary judgment.

When the hearing occurred, it concerned only the People's motion for summary judgment. Although mother's trial counsel sought to have mother testify, the trial court refused to allow her to do so. Then, based on the People's affidavits and no contrary evidence, the juvenile court granted the People's motion and terminated mother's parental rights.

### I. Summary Judgment and Due Process

Mother contends that termination of parental rights by summary judgment violates her right to due process by precluding a parent's right to an evidentiary hearing. We disagree.

■ The Colorado Rules of Civil Procedure apply to those juvenile matters that are not governed by the Colorado Rules of Juvenile Procedure or the Children's Code. Because of that principle, summary judgment under C.R.C.P. 56 has been held to be permissible in the adjudicatory phase of a dependency and neglect action. *People in Interest of S.B.,* 742 P.2d 935 (Colo.App.1987). However, whether summary judgment is an appropriate method for termination of the parent-child legal relationship is an issue of first impression in Colorado.

Courts of other states considering the issue are divided. Some have disallowed summary judgment in termination proceedings on procedural grounds. *Curtis v. Curtis,* 104 N.C.App. 625, 410 S.E.2d 917 (N.C.App.1991) (rules of civil procedure do not apply to termination proceedings; therefore, summary judgment unavailable); *In re Mark K.,* 159 Cal.App.3d 94, 205 Cal.Rptr. 393 (Cal. App.1984) (statutory speedy trial requirement of termination proceeding renders summary judgment procedures inappropriate). Others have done so on constitutional grounds. *In re Christina T.,* 590 P.2d 189 (Okla.1979) (due process right to be heard mandates hearing on juvenile petition); *In re Interest of Philip W.,* 189 Wis.2d 432, 525 N.W.2d 384 (Wis.App.1994) (due process entitles parent to hearing).

In contrast, however, a New Mexico court has held that summary judgment may be granted in termination proceedings because the rules of civil procedure apply to such proceedings. *New Mexico ex rel. Children, Youth & Families Department In re T.C.,* 118 N.M. 352, 881 P.2d 712 (App.1994). Also, the Wyoming Supreme Court has held that summary judgment may be appropriate in the narrow range of parental rights termination cases in which all the historical facts are uncontroverted. However, the court further ruled that "where the petition is appropriately and diligently contested, summary judgment is seldom to be the answer for parental rights termination." *In Interest of SVG,* 826 P.2d 237, 244 (Wyo.1992).

### A.

■ As an initial matter, we must determine whether C.R.C.P. 56 regarding summary judgment is applicable in a termination of parental rights proceeding under the Children's Code. Following *People in Interest of S.B., supra,* we conclude that the Colorado Rules of Civil Procedure, including C.R.C.P. 56, are applicable to parental rights termination proceedings in dependency and neglect actions.

With respect to the applicable statutory scheme, we note that § 19–3–602(1), C.R.S. (1995 Cum.Supp.) provides that:

> Termination of a parent-child legal relationship shall be considered only after the filing of a written motion alleging the factual grounds for termination, and termination of a parent-child legal relationship shall be considered at a separate hearing following an adjudication of a child as dependent or neglected.

Although the statute refers to "a separate hearing," it does not specify that the hearing be an evidentiary one. In *People in Interest of S.B., supra*, the majority rejected the argument that similar language in § 19–3–106(1), C.R.S. (1986 Repl.Vol. 8B) regarding an adjudicatory hearing required that there be an evidentiary hearing at that phase of a dependency and neglect action. *But see People in Interest of S.B., supra* (Babcock, J., dissenting). Accordingly, we similarly conclude that nothing in the language of § 19–3–602(1) precludes disposition of the action by summary judgment at the parental rights termination stage of a dependency and neglect action.

### B.

■ Thus, the dispositive issue becomes whether the use of the summary judgment procedure here violated mother's right to due process. We conclude that it does not.

■ Due process requires that a respondent in a termination proceeding be given both notice of the proceedings and an opportunity to be heard or defend and to have the assistance of legal counsel. Such due process rights are satisfied if the respondent has an opportunity to appear through counsel and is given an opportunity to present evidence and cross-examine witnesses through deposition or otherwise. *People in Interest of V.M.R.*, 768 P.2d 1268 (Colo.App.1989).

■ However, because a proceeding for termination of the parent-child legal relationship is civil, neither due process nor other constitutional guarantees confer upon a respondent a right of confrontation or require the respondent's presence at the termination hearing. *People in Interest of C.G.*, 885 P.2d 355 (Colo.App.1994).

■ In light of these principles, we perceive no per se due process bar to the use of summary judgment procedures in termination cases. However, summary judgment is a drastic remedy and should be granted only when there are no genuine issues as to any material fact. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972). Moreover, the termination of the parent-child legal relationship is a drastic remedy that affects a parent's fundamental liberty interest. *People in Interest of C.L.S.*, 705 P.2d 1026 (Colo.App. 1985).

Therefore, we agree with the reasoning of the Wyoming Supreme Court in *In Interest of SVG*, 826 P.2d at 244, that the required standard of clear and convincing evidence in parental termination proceedings significantly limits the cases in which summary judgment would be appropriate and that when the motion for termination of parental rights "is appropriately and diligently contested, summary judgment is seldom to be the answer for parental rights termination."

### C.

In light of our conclusions above, we must consider the applicable standard of proof for termination of parental rights by summary judgment.

■ Our supreme court has ruled that because the applicable standard of proof in a summary judgment motion is whether there is a genuine issue of material fact, neither the "clear and convincing" nor the "preponderance of the evidence" standard is applicable. *Neves v. Potter*, 769 P.2d 1047 (Colo. 1989). However, because termination of the parent-child legal relationship is a drastic remedy that affects a parent's liberty interest, a court deciding a summary judgment motion seeking to terminate parental rights must apply the standard of clear and convincing evidence to the applicable statutory criteria. *See People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982).

As pertinent here, the statute provides for termination when the child is adjudicated

dependent and neglected, the parent has not reasonably complied with a treatment plan, the parent is unfit, and the conduct or condition of the parent is unlikely to change within a reasonable time. § 19–3–604(1)(c), C.R.S. (1995 Cum.Supp.).

■ Therefore, in assessing a summary judgment motion seeking to terminate parental rights, the trial court must not only determine that there are no genuine issues of material fact, but also must determine that the moving party has established the applicable statutory criteria for termination by clear and convincing evidence. *See People in Interest of A.M.D., supra; In re EB*, 795 P.2d 1212 (Wyo.1990)(summary judgment seeking to terminate parental rights must be supported by clear and convincing evidence); *In Interest of SVG, supra*.

■ Here, because the trial court's termination order did not state that the court had applied the clear and convincing standard, its summary judgment may not stand.

### II. Timeliness of Summary Judgment Motion

As an alternative basis for reversing the summary judgment, mother asserts that the judgment should be set aside because the motion for summary judgment was not timely filed by the People. Even though mother failed to preserve this issue for review, we agree that this defect is of such significance that it, too, negates the validity of the judgment entered.

### A.

■ This case presents one of those limited situations in which an error by the trial court, not otherwise properly preserved for appeal, should be characterized as fundamental or one causing a miscarriage of justice, thereby allowing us to consider it on appeal. *See Polster v. Griff's of America, Inc.*, 184 Colo. 418, 520 P.2d 745 (1974).

C.R.C.P. 56 mandates filing of summary judgment motions no later than 75 days prior to trial unless otherwise ordered by the court. Here, the People filed the summary judgment motion only 17 days before trial without seeking court approval. Additional-

ly, the People's supporting affidavits were not filed within the time constraints of C.R.C.P. 121 § 1–15(2). Mother, however, failed to protest the late filing even though she had notice of the People's intent to file a summary judgment motion two months before the hearing date. Also, mother did not file a motion for continuance of the hearing date and did not allege that her ability to defend the action was prejudiced by the timing of the summary judgment motion. Finally, mother did not object to the untimeliness of the motion at the hearing.

To appreciate the significance of the untimely filing of the summary judgment motion one must bear in mind the ruling in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) that parents have a fundamental liberty interest in the care, custody, and management of their children, and that before a state may completely and irrevocably sever a parent's rights in his or her natural child, due process requires that the state support its allegations by at least clear and convincing evidence.

Because of the truncated time frame in which the summary judgment motion was filed and considered, we conclude that mother was deprived of a meaningful opportunity to participate in the termination proceeding.

### B.

■ Although summary judgment may be appropriate in a narrow range of termination hearings in dependency and neglect cases, we do not consider it appropriate here.

The above review of the record demonstrates that this matter was litigated as a traditional dependency and neglect action with a view to a hearing in court with live witnesses until less than three weeks before the date set for that hearing. At that time, on a piecemeal basis, the People submitted their motion for summary judgment and supporting affidavits, with little time for mother's attorney to respond. When he did respond, mother's attorney challenged the propriety of the summary judgment procedure at a termination hearing, but did not submit any affidavits opposing the motion.

Moreover, until a few months before the termination hearing, the department's representatives and the juvenile court anticipated that the mother might be reunited with her child. Indeed, comments by the court itself indicated to mother and her counsel that termination would depend on her actions during the time preceding the hearing. Subsequently, mother's trial counsel was required simultaneously to respond to a summary judgment motion and to prepare for a hearing for termination of parental rights, even though the summary judgment motion itself did not comply with the time requirements set forth in C.R.C.P. 56 and 121, § 1–15. Furthermore, as noted above, at that time there was no precedent authorizing the termination of parental rights by summary judgment.

Also, it is undisputed that mother was present on October 24, 1994, and available to testify at the summary judgment hearing on her own behalf and that the trial court believed that it lacked the authority to permit her to testify at this hearing. Finally, the trial court's termination order did not state that the court had applied the required standard of proof by clear and convincing evidence. *See People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982).

Under these circumstances, the trial court's decision to terminate mother's parental rights by summary judgment was a fundamental error that prejudiced mother's right to maintain a parent-child relationship and denied her a meaningful day in court. *Cf. Benson v. Colorado Compensation Insurance Authority,* 870 P.2d 624 (Colo.App.1994) (if no prejudice shown, failure to allow opportunity to respond under C.R.C.P. 56 and 121 not reversible error).

The judgment is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

KAPELKE, J., concurs.

NEY, J., specially concurs.

Judge NEY specially concurring.

I concur with the majority that the judgment terminating the parent/child legal relationship between R.H. and A.E. must be reversed. I write separately because I believe that summary judgment procedures are not appropriate in a termination proceeding under the Children's Code.

The majority recognizes that parents have a fundamental liberty interest in the care, custody, and management of their children such that, before the state may completely and irrevocably sever a parent's rights in his or her natural child, due process requires that the parent be permitted to participate in a meaningful manner in the termination proceedings. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, although the majority recognizes that § 19–3–602(1), C.R.S. (1995 Cum.Supp.) provides for termination only after a separate hearing, it also determines that such a hearing need not be an evidentiary hearing and a summary proceeding may be used. With this conclusion I cannot agree.

Because termination of the parent/child relationship so drastically affects a parent's liberty interest, I would hold that summary judgment is inappropriate in the context of termination of parental rights. *See In re Interest of Philip W.,* 189 Wis.2d 432, 525 N.W.2d 384 (Wis.App.1994); *In re Christina T.,* 590 P.2d 189 (Okla.1979).