24CA0686 Peo in Interest of IG 11-14-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0686
Prowers County District Court No. 23JV30020
Honorable Mike Davidson, Judge

The People of the State of Colorado,

Petitioner,

In the Interest of I.G., a Child,

and Concerning R.G.,

Appellant.

JUDGEMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

Jenna L. Mazzucca, Guardian Ad Litem

Katayoun A. Donnelly, Office of Respondent Parents' Counsel, Denver,
Colorado, for Appellant

¶ 1     R.G. (father) appeals the judgment adjudicating I.G. (the child) dependent and neglected by summary judgment.  We affirm the adjudication, but we reverse the disposition and remand the case to the juvenile court to ensure compliance with the Indian Child Welfare Act (ICWA) of 1978, 25 U.S.C. §§ 1901-1963, and Colorado's ICWA statute, § 19-1-126, C.R.S. 2024.

I.     Background

¶ 2     In July 2023, the Prowers County Department of Human Services (Department) received a report that the child's half-sibling had tested positive for controlled substances at birth.  The Department opened a voluntary case, but mother did not comply.  The Department then filed a petition in dependency and neglect and alleged, among other things, that father was in prison.  Father denied the allegations in the petition and asked for a jury trial.

¶ 3     The juvenile court set the matter for an adjudicatory trial in November 2023.  However, prior to trial, the Department moved for an adjudication by summary judgment.  In response, father asserted that summary judgment was improper at the adjudicatory phase of a dependency and neglect case because he had "an unqualified right to trial by a jury."  After considering the parties'

pleadings and arguments, the court granted the Department's motion, vacated the jury trial, and adjudicated the child dependent and neglected. The court then adopted a treatment plan for father.

## II.    ICWA

¶ 4    As a preliminary matter, because the record does not establish that the juvenile court complied with the provisions of ICWA and Colorado's ICWA statute, we reverse the disposition and remand the case for further proceedings. *See People in Interest of M.V.*, 2018 COA 163, ¶ 35 (noting that a dispositional hearing is a child custody proceeding under ICWA, but an adjudicatory hearing is not), *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.

¶ 5    For ICWA to apply in a dependency and neglect proceeding, the case must involve an Indian child. *See People in Interest of A.G.-G.*, 899 P.2d 319, 321 (Colo. App. 1995); *see also* 25 U.S.C. § 1903(4) (defining "Indian child" as "any unmarried person who is under age eighteen" and (1) "a member of an Indian tribe," or (2) "eligible for membership in an Indian tribe" and "the biological child of a member of an Indian tribe"). To ascertain whether the case involves an Indian child, a juvenile court must inquire of the parties

whether they know or have reason to know that the child is an Indian child. § 19-1-126(1)(a)(I)(A). A mere assertion of Native heritage, without more, is insufficient to give the court reason to know that the child is an Indian child. *E.A.M.*, ¶ 56.

¶ 6 The record does not show that the juvenile court ever inquired of father as to whether he knew or had reason to know that the child was an Indian child. Nevertheless, father submitted an ICWA assessment form, in which he stated that the child had Apache heritage through the paternal family. But father stated that he did not know if the child was a member of a tribe or eligible for membership. That said, father indicated on the form that he was a member of a tribe or eligible for membership.

¶ 7 Based on this record, the juvenile court did not have reason to know that the child was an Indian child because, even though father claimed to be a member of a tribe, he said that he did not know whether the child was a member or eligible for membership. 25 U.S.C. § 1903(4). Therefore, at a minimum, the court had information that "the child may have Indian heritage," and consequentially the court was required to "direct the petitioning or filing party to exercise due diligence in gathering additional

3

information that would assist the court in determining whether there is reason to know that the child is an Indian child." § 19-1-126(3); *see also H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5. But there is nothing in the record to indicate that the court ever directed the Department to exercise due diligence. And the court never made a finding about whether it had reason to know that the child was an Indian child. *See H.J.B.*, ¶ 59 (concluding that, if section 19-1-126(3) applies, then "the juvenile court must determine (1) whether the petitioning party satisfied its statutory due diligence requirements and (2) whether the court now has reason to know that the child is an Indian child").

¶ 8    We must therefore reverse the disposition and remand the case to the juvenile court. *See M.V.*, ¶ 35. On remand, the court should first inquire of father whether he knows or has reason to know that the child is an Indian child. § 19-1-126(1)(a)(I)(A). If father maintains that the child has Apache heritage but is not a member or eligible for membership in a tribe, the court should direct the Department to exercise due diligence under section 19-1-126(3). *See H.J.B.*, ¶¶ 57-59 (describing actions that a petitioning party should take to satisfy section 19-1-126(3)). However, if after

4

making the proper inquiries the court has reason to know that the child is an Indian child, it must direct the Department to send notices to applicable tribes and treat the child as an Indian child unless and until it determines that the child does not meet the definition of an Indian child. *See* § 19-1-126(1)(b), (2). Finally, once the court resolves these questions, it may reenter the disposition.

### III. Summary Judgment

¶ 9  Father contends that adjudication by summary judgment is impermissible at the adjudicatory phase of a dependency and neglect case. We disagree.

### A. Standard of Review and Principles of Statutory Construction

¶ 10  To resolve this appeal, we must interpret statutes and rules of procedure. Our review is de novo. *See People in Interest of C.L.S.*, 313 P.3d 662, 665-66 (Colo. App. 2011) (statutes); *see also Boudette v. State*, 2018 COA 109, ¶ 20 (procedural rules). In construing procedural rules, we employ the same interpretive principles applicable to statutory construction as described below. *Boudette*, ¶ 20.

¶ 11  We must liberally construe provisions of the Colorado Children's Code to serve the welfare of children and the best

interests of society, *People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011), and avoid "any technical reading" that "would disregard [a child's] best interests," *C.S. v. People in Interest of I.S.*, 83 P.3d 627, 635 (Colo. 2004). We favor interpretations that produce a harmonious reading of the statutory scheme, *People in Interest of J.G.*, 2016 CO 39, ¶ 13, and we presume that the General Assembly intended a just and reasonable result by avoiding an interpretation that would lead to an absurdity. *People in Interest of H.*, 74 P.3d 494, 495 (Colo. App. 2003).

¶ 12    In construing statutes, appellate courts must ascertain and give effect to the General Assembly's intent. *J.G.*, ¶ 13. To do this, we look to the language of the statute and give effect to the plain and ordinary meaning of the General Assembly's words. *People in Interest of B.C.B.*, 2024 COA 88, ¶ 15. Because we must respect the General Assembly's choice of language, we do not add or subtract words from a statute. *See People v. Laeke*, 2018 COA 78, ¶ 15. If the language in a statute is clear and unambiguous, we apply it as written. *See State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000).

## B.    Applicable Law

¶ 13    The government may initiate an action in dependency and neglect by filing a petition setting forth its allegations.  § 19-3-502, C.R.S. 2024.  After an advisement, parents may admit or deny the allegations, and if they deny the allegations, they may demand a trial by jury.  C.R.J.P. 4.2; § 19-3-202(2), C.R.S. 2024.  At a hearing to the court or jury trial, the government must prove the allegations by a preponderance of the evidence.  § 19-3-505(1), C.R.S. 2024; *see also J.G.*, ¶ 15.

¶ 14    To meet its burden, the government must establish that the facts satisfy one of the grounds for adjudication in section 19-3-102, C.R.S. 2024.  If the government proves the allegations by a preponderance of the evidence, then the juvenile court will sustain the petition and adjudicate the child dependent and neglected.  § 19-3-505(7).  "The adjudication represents the court's determination that state intervention is necessary to protect the child and that the family requires rehabilitative services in order to safely parent the child."  *A.M. v. A.C.*, 2013 CO 16, ¶ 12.

¶ 15    Divisions of this court have determined that a juvenile court may adjudicate a child dependent and neglected by summary

judgment under C.R.C.P. 56. *See People in Interest of A.E.*, 914 P.2d 534 (Colo. App. 1996) (termination); *People in Interest of S.B.*, 742 P.2d 935 (Colo. App. 1987) (adjudication). C.R.C.P. 56 allows a court to grant summary judgment when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, to grant summary judgment at the adjudicatory phase, "(1) the evidentiary facts — the raw historical data underlying the controversy — must be undisputed, and (2) a reasonable trier of fact must not be able to draw divergent inferences when applying the undisputed facts to the statutory criteria" in section 19-3-102. *People in Interest of C.M.*, 2024 COA 90, ¶ 18.

¶ 16     Two divisions of this court have directly addressed whether the summary judgment procedures in C.R.C.P. 56 are applicable to dependency and neglect proceedings.

¶ 17     First, in *S.B.*, a division of this court considered whether the summary judgment procedures in C.R.C.P. 56 were applicable at the adjudicatory phase. The division determined that, because the Rules of Juvenile Procedure and the Colorado Children's Code did not address summary judgment, juvenile courts could apply the

8

Rules of Civil Procedure, as permitted by C.R.J.P. 1. *S.B.*, 742 P.2d at 938-39. In a dissent, Judge Babcock disagreed with the premise that summary judgment could be applied in dependency and neglect cases because (1) the Children's Code impliedly required an evidentiary hearing; (2) depriving parents of an evidentiary hearing "raise[d] substantial constitutional questions concerning denial of due process and equal protection"; and (3) the Juvenile Rules suggested that a dependency and neglect case could not "be resolved on pleadings alone." *People in Interest of S.B.*, 742 P.2d 935, 942 (Colo. App. 1987) (Babcock, J., dissenting).

¶ 18    Second, in *A.E.*, another division of this court addressed whether summary judgment was appropriate at the termination phase of a dependency and neglect case. Relying on *S.B.*, the division concluded that the Civil Rules applied because the Juvenile Rules and the Children's Code were silent on issues of summary judgment. *A.E.*, 914 P.2d at 537. The division also rejected the parent's assertion that section 19-3-602(1), C.R.S. 2024, required an evidentiary hearing. *A.E.*, 914 P.2d at 538. Last, the division concluded that summary judgment did not violate the parent's due process rights, considering that due process did not "confer upon a

[parent] a right of confrontation or require the [parent's] presence at the termination hearing." *Id.*

## C. Analysis

¶ 19    To begin, we address whether the supreme court's decision in *People in Interest of S.N.*, 2014 CO 64, forecloses father's position on appeal. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (noting that the Colorado Court of Appeals is bound by the precedent of the Colorado Supreme Court). In *S.N.*, ¶ 1, our supreme court determined that, on a case-by-case analysis, a juvenile court could adjudicate a child by summary judgment in a case involving prospective harm. In his dissent, Justice Coats noted that "the court of appeals [had] acknowledged a broader disagreement . . . about the propriety of summary judgment in dependency and neglect adjudications as an entire class," but the division did not "resolve that disagreement because its holding in this case rested on narrower grounds for disapproval." *People in Interest of S.N.*, 2014 CO 64, ¶ 31 (Coats, J., dissenting). Consequently, Justice Coats believed that the majority had "implicitly, but necessarily, foreclose[d] the broader issue, without briefing, argument, or any consideration at all." *Id.*

¶ 20    In this case, the juvenile court relied, in part, on *S.N.* to reject

father's contention and grant summary judgment.  But we agree

with father that, because the parties did not argue the broader

issue in *S.N.*, it was not before the supreme court and as a result,

the supreme court did not consider that issue in its holding.

Therefore, we can consider the merits of father's appeal.  *See People*

*v. Smoots*, 2013 COA 152 ¶ 21 (one division of the court of appeal is

not bound by the decision of another division).

¶ 21    We are not persuaded by father's assertion that the Colorado

Children's Code provides an absolute right to an adjudicatory

hearing before a jury.  To be sure, section 19-3-202(2) provides a

parent with the right to "demand a trial by jury of six persons at the

adjudicatory hearing," but it does not guarantee an absolute right

to have one.  Indeed, a jury trial can be waived by a party's

inaction.  *See* C.R.J.P. 4.3(a) ("Unless a jury is demanded or

ordered, it shall be deemed waived."); C.R.C.P. 39(a)(3) (a party may

waive a jury trial if "all parties demanding trial by jury fail to appear

at trial"); *see also People in Interest of C.C.*, 2022 COA 81, ¶ 12

(recognizing that C.R.C.P. 39(a)(3) applies in dependency and

neglect cases).

¶ 22     Likewise, we do not think that section 19-3-505(1) provides parents with an absolute right to an adjudicatory hearing before a jury (as argued in the briefs) or a judge (as argued at oral argument).  Section 19-3-505(1) provides that, "[a]t the adjudicatory hearing, the court shall consider whether the allegations of the petition are supported by a preponderance of the evidence."  In our view, section 19-3-505 explains only what should occur at an adjudicatory hearing if one is held.  Notably, the dissent in *S.B.* advanced a similar position with respect to former section 19-3-106(1), C.R.S. 1986.  That statute was repealed and replaced with section 19-3-505(1) following the decision in *S.B.*, but the General Assembly declined the opportunity to add language clarifying the right to an evidentiary hearing.  *See* Ch. 138, sec. 1, § 19-3-505, 1987 Colo. Sess. Laws. 306; *see also Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 13 ("When the General Assembly legislates in a particular area, we presume it was aware of existing case law precedent.").

¶ 23     Ultimately, father has not directed us to anything in the Children's Code that specifically confers upon a parent an absolute right to an adjudicatory hearing before a jury.  Because the General

Assembly did not specifically provide for an absolute right to an adjudicatory hearing before a jury when it had an opportunity to do so, we decline father's invitation to read words into the statutes that do not appear in them. *See Laeke*, ¶ 15; *see also People v. Griffin*, 397 P.3d 1086, 1089 (Colo. App. 2011) (noting that, if the General Assembly intended an "unusual requirement," it would have said so explicitly).

¶ 24    Nor are we convinced to reach a different conclusion based on father's assertion that C.R.C.P. 56 conflicts with C.R.J.P. 4.1. C.R.J.P. 4.1(a) states that "no written responsive pleadings are required." In other words, unlike in general civil cases, parents are not required to file an answer to the Department's complaint (i.e., the petition in dependency and neglect). *Cf.* C.R.C.P. 7(a) (In a general civil case, "[t]here shall be a complaint and answer."). And although C.R.C.P. 56(c) allows a court to consider the pleadings when deciding whether to enter summary judgment, father does not explain why the lack of an answer in dependency and neglect cases necessarily prevents a court from entering summary judgment.

¶ 25    Father also asserts that a motion for summary judgment is not permitted by C.R.J.P. 4.1(b) because it is not a "defense" or an

"objection" under C.R.J.P. 4.1(b).  C.R.J.P. 4.1(b) recognizes that a party may file a motion raising "[a]ny defense or objection which is capable of determination without trial of the general issues."  But simply because C.R.J.P. 4.1(b) allows a party to file certain motions does not mean that other types of motions capable of determination without trial, such as a motion for summary judgment, are prohibited.  Father has not cited any authority for this proposition, and we are not aware of any.

¶ 26    We therefore agree with the divisions in *S.B.* and *A.E.* that because dependency and neglect proceedings are civil proceedings and the Rules of Juvenile Procedure do not address summary judgment, juvenile courts can apply the summary judgement procedures in the Rules of Civil Procedure.  *See A.E.*, 914 P.2d at 537; *S.B.*, 742 P.2d at 938-39; *see also People in Interest of C.C.G.*, 873 P.2d 41, 43 (Colo. App. 1994) (recognizing that "[s]ummary judgment is applicable to proceedings in dependency and neglect).

¶ 27    Finally, we disagree with father's assertion that the use of summary judgment procedures in dependency and neglect proceedings violates a parent's right to a fundamentally fair proceeding.  Because "[p]arents have a constitutionally protected

liberty interest in the care, custody, and management of their children," *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 17, they must be provided "fundamentally fair procedures" to satisfy due process, *J.G.*, ¶ 20 (quoting *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). At a minimum, a parent must be given adequate notice of the proceeding and an opportunity to be heard. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007); *see also People in Interest of A.B-A.*, 2019 COA 125, ¶ 50.

¶ 28    Among other things, "[t]he purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). Generally, a parent can challenge the allegations against them at a trial, and due process is satisfied if the parent is allowed to present evidence and cross-examine witnesses. *See J.G.*, ¶ 25. But "[s]ummary judgment is only appropriate in those circumstances where there is no role for the fact finder to play" because the material facts are undisputed. *Anderson v. Vail Corp.*, 251 P.3d 1125, 1127 (Colo. App. 2010). In other words, summary judgment does not deprive a parent of the opportunity to test the

allegations against them at a trial because summary judgment is only appropriate when there are no disputed facts. *See S.N.*, ¶ 16. If there are disputed facts, then the juvenile court must deny the motion for summary judgment and require the Department to prove its allegations by a preponderance of the evidence at a hearing. *See People in Interest of S.N.*, 2014 COA 116, ¶ 37 (noting that summary judgment is warranted only infrequently in dependency and neglect adjudications). We therefore discern no due process violation.

¶ 29 In sum, because (1) a parent does not have an absolute statutory right to an adjudicatory hearing before a jury; (2) the Juvenile Rules do not conflict with C.R.C.P. 56; and (3) summary judgment does not violate a parent's right to a fundamentally fair proceeding, we conclude that a juvenile court may adjudicate a child by summary judgment. And because father does not otherwise assert that the court improperly entered summary judgment in this case, we discern no basis for reversal.

## IV. Disposition

¶ 30 The judgment is affirmed in part and reversed in part, and the case is remanded to the juvenile court for further ICWA determinations.

JUDGE GROVE and JUDGE LUM concur.