**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Carey Andre GRIFFIN, Defendant–Appellant.**

No. 08CA2694.

Colorado Court of Appeals, Div. V.

March 17, 2011.

Rehearing Denied April 21, 2011.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Porter–Merrill, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Carey Andre Griffin was convicted of failure to register as a sex offender, in violation of section 18–3–412.5(1)(g) and (2), C.R.S. 2010. On appeal, he contends that his conviction must be vacated because the prosecution failed to prove an element of the charged offense. We agree and vacate the judgment of conviction.

## I. Background

Griffin, a convicted sex offender, is required to register with certain law enforcement agencies under the Colorado Sex Offender Registration Act, sections 16–22–101 to –115, C.R.S.2010.

In 2006, Griffin canceled his registration in Denver, where he had been living. He said that he would be moving to a specific address in Adams County, and he was told that he would have to register with authorities in that county. But Griffin never registered there.

In 2007, Griffin was arrested in another state. He was brought to Colorado and was charged with failure to register. He was tried by the court and was convicted of the charged offense. The court found that Griffin had failed to register after establishing a residence in Adams County.

## II. Issue Presented

Griffin contends that he was not required to register in Adams County. His argument is as follows:

*Factual premise.* Although I had intended to live in Adams County, I never moved there because my housing arrangements fell through.

*Legal premise.* Because I never lived in Adams County, I was not required to register there.[1]

This argument constitutes a challenge to the sufficiency of the evidence. We must determine whether the evidence is sufficient to support a conclusion, beyond a reasonable doubt, that Griffin is guilty of the crime charged. *See People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999). We view the evidence in the light most favorable to the prosecution. *Id.*

## III. Discussion

Griffin's factual premise is sound. It is undisputed that, when Griffin canceled his registration in Denver, he intended to move to a specific house in Adams County. But the evidence adduced at trial does not support a finding, beyond a reasonable doubt, that Griffin ever lived in that house (or in any other place in Adams County).

Griffin's legal premise presents a more complicated issue: Can a sex offender "establish a residence," within the meaning of the registration act, without residing in the dwelling?

■ If we could resolve this issue solely according to the plain meaning of the disputed language, our decision would be easy. Ordinarily, the phrase "establish a residence" is understood to involve a physical presence—an act of residing—in the dwelling.

1. Griffin's argument raises the possibility that he was guilty of failing to register in jurisdictions other than Adams County. We do not address that issue because this case rests solely on Griffin's failure to register in Adams County.

*See Carlson v. District Court,* 116 Colo. 330, 338, 180 P.2d 525, 529–30 (1947) ("residence" requires bodily presence as an inhabitant); *see also Black's Law Dictionary* 1423 (9th ed. 2009) ("residence" is "[t]he place where one actually lives, as distinguished from a domicile"); *Webster's Third New International Dictionary* 1931 (2002) (same).

But the People argue that "establish a residence" has a special meaning under the registration act. Relying on sections 16–22–102(5.7) and –105(3), C.R.S.2010, they argue that a sex offender may "establish a residence" merely by intending to live in a place.

We acknowledge that the People's argument is supported by some statutory text. But we ultimately reject their view. After examining the disputed language in context of the entire registration act, we conclude that the phrase "establish a residence" requires (among other things) a physical presence or occupancy.

### A. Defining "Residence"

■ Section 16–22–102(5.7) defines the term "residence" for purposes of the registration act:

> "Residence" means a place or dwelling that is used, intended to be used, or usually used for habitation by a person who is required to register pursuant to section 16–22–103. "Residence" may include, but is not limited to, a temporary shelter or institution, if the owner of the shelter or institution consents to the person utilizing the shelter or institution as his or her registered address as required by section 16–22–106(4) or 16–22–107(4)(a) and if the residence of the person at the shelter or institution is capable of verification as required by section 16–22–109(3.5). A person may establish multiple residences by residing in more than one place or dwelling.

The People note that, under this definition, a residence includes a place that is "intended to be used" for habitation. In their view, this language indicates that a sex offender

may establish a residence by mere intent, without ever being physically present.

We disagree. The provision's first sentence (on which the People rely) plainly focuses on "residence" as a *location.* The sentence does not purport to tell us how a sex offender might *establish* a residence but rather is intended to answer routine questions about the place itself. (For example, "What if the sex offender is living in something other than a conventional dwelling?") In contrast, the provision's last sentence plainly links the act of *establishing* to the act of *residing* : "A person may establish multiple residences by residing in more than one place or dwelling."

### B. Intent to Establish a Residence

■ Section 16–22–105(3) states that an offender must register where he "establishes a residence," and it provides information about how that intent may be proven:

> For purposes of this article, any person who is required to register pursuant to section 16–22–103 shall register in all jurisdictions in which he or she establishes a residence. *A person establishes a residence through an intent to make any place or dwelling his or her residence.* The prosecution may prove intent to establish residence by reference to hotel or motel receipts or a lease of real property, ownership of real property, proof the person accepted responsibility for utility bills, proof the person established a mailing address, or any other action demonstrating such intent.
>
> Notwithstanding the existence of any other evidence of intent, occupying or inhabiting any dwelling for more than fourteen days in any thirty-day period shall constitute the establishment of residence.

(Emphasis added.)

We conclude that this provision does not obviate the need for physical presence or occupancy. Rather, it distinguishes the kind of occupancy that requires registration from the kind that does not.[2] Thus, contrary to

---

**2.** Consider, for example, a sex offender who is traveling in Colorado. Must this offender register in every jurisdiction in which he stays? That

is the type of question that section 16–22–105(3) was intended to answer. Under the statute, the offender need not register unless he intends to

the People's view, we conclude that the emphasized language does not require a sex offender to register where he merely intends to live.

Our conclusion rests on three observations.

1. If the legislature had wanted offenders to register in every jurisdiction in which they merely intend to reside, it would have said so directly.

Colorado's act plainly requires sex offenders to give notice of where they "intend to reside" upon release from custody or confinement. *See* §§ 16–22–106(3)(b), –107(2), C.R.S.2010. This notice helps authorities determine whether the offender's residence will satisfy various requirements. *See* § 16–22–107(4), C.R.S.2010 (outlining authorities' duty to investigate the intended residence).

But the act does not similarly require offenders to register where they intend to reside. Instead, it requires offenders to register where they "reside." *See* § 16–22–108(1)(a)–(b), (2), C.R.S.2010; *see also* § 16–22–106(3)(b) (after telling the sheriff where he "intends to reside," the offender is informed of his duty to register in each jurisdiction in which he "resides"); § 16–22–107(2) (same, when offender is discharged from prison).

If the legislature had wanted offenders to register where they merely intend to reside, it certainly knew how to say so. And we would expect such an unusual requirement to have been stated clearly and directly (instead of implicitly, by defining "establish a residence" in a manner that defies common understanding). *Cf. Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 432 (D.C.Cir.2007) ("Had Congress intended such an unusual result, we expect it would have clearly said so."). It is significant that the statute contains no such requirement.

2. A closely related phrase—"establish an additional residence"—requires the act of residing.

■ When construing language that is part of a regulatory scheme, we must adopt an interpretation that gives consistent and

make that place his residence. But if he occupies a place for more than fourteen days in any

harmonious effect to all provisions. *Left Hand Ditch Co. v. Hill*, 933 P.2d 1, 3 (Colo. 1997). Thus, we must construe the disputed phrase—"establish a residence"—in harmony with a closely related phrase: "establish an additional residence." *See* § 16–22–108(3)(c), C.R.S.2010 (sex offender must register if he "[e]stablishes an additional residence in another jurisdiction or an additional residence in the same jurisdiction").

Various provisions indicate that an offender may "establish an additional residence" only by residing. *See* § 16–22–102(5.7) ("A person may establish multiple residences by residing in more than one place or dwelling."); § 16–22–108(1)(c), C.R.S.2010 (after establishing an additional residence, the offender must reregister "so long as the person resides in said jurisdiction"); § 18–3–412.5(1)(g) (sex offender is guilty if he fails to register "in each jurisdiction in which [he] resides upon changing an address, establishing an additional residence, or legally changing names").

3. The act does not enable enforcement of a duty to register where the offender merely intends to reside.

If "establish a residence" is understood to require an act of residing, then the offender's duties are clear. The offender must register within five days of establishing the residence. *See* § 16–22–108(1)(a) (offender must confirm his "initial registration" within five days of being released), (1)(c) (offender must register within five days of establishing the additional residence). He must reregister on his birthday (or the next business day) as long as he continues to reside in the jurisdiction. *See* § 16–22–108(1)(b)–(c). And he must cancel his registration within five days of ceasing to reside in the residence. *See* § 16–22–108(4)(a), C.R.S.2010.

But if the phrase "establish a residence" is interpreted as the People urge, then the offender's obligations are undefined:

- In the People's view, the offender must register wherever he intends to reside. But what is the deadline? How long does the offender have after forming the intent to reside in a particular

thirty-day period, he must register regardless of his intent.

place? The statute does not say. (In the absence of a specific deadline, Griffin could argue that he still had time to register in Adams County.)

- Must the offender periodically reregister as long as he intends to live in the place? The statute does not say. (Certainly, the offender's duty cannot be premised on his "continuing" to reside in the place if he never resided there.)
- And what if the offender abandons his intent to reside in the place? Must he cancel his registration? Again, the statute provides no answer. (The duty to cancel cannot be premised on the fact that the offender has ceased to reside, if the offender never resided there.) [3]

Because the People's interpretation yields unworkable results, we reject it. *See Adams County School Dist. v. Dickey,* 791 P.2d 688, 691 (Colo.1990) ("Statutes must be construed as a whole to give a consistent, harmonious, and sensible effect to all of their parts."); *see also Wolford v. Pinnacol Assurance,* 107 P.3d 947, 951 (Colo.2005) (rejecting an interpretation that yields unworkable results).

### IV. Conclusion

The prosecution did not prove that Griffin resided in Adams County. It therefore failed to establish that Griffin was required to register there. In the absence of evidence establishing that critical element of the offense, Griffin's conviction cannot stand.

The judgment is vacated.

Judge WEBB and Judge GABRIEL concur.

---

**3.** Similar observations apply to provisions that require an offender to register when he "changes [his] address." *See* § 16–22–108(3)(a), (3)(a.5), C.R.S.2010. The language of these provisions suggests that one "changes" an address by physically moving, and not merely by filing a form. *See* § 16–22–108(3)(a) (offender must register each change, even if he "has moved to a new address within the jurisdiction"), (3)(a.5) (offender must register if he "[c]hanges the address at which a trailer or motor home is located"). If "change" is construed to require physical relocation, then the offender's obligations are clear. E.g., § 16–22–108(4)(a) (offender must cancel his registration within five days of "ceasing to reside at an address"). But if "change" is construed so that it applies to the mere filing of a form, then the offender's duties are undefined: there is no specific deadline, and it is unclear whether the offender must reregister or cancel.