The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 5, 2026

**2026COA6**

**No. 24CA1649, Bohanan v. Esurance Property & Casualty Insurance Co. — Insurance — Regulation of Insurance Companies — Unfair Competition and Deceptive Practices — Required Disclosures**

This case requires a division of the court of appeals to interpret the phrase "is or may be relevant" as used in section 10-3-1117(2)(a), C.R.S. 2025, for the first time in a published Colorado appellate opinion.

The plaintiff was injured in a motor vehicle accident caused by a driver who obtained liability coverage through an insurance policy apparently issued after the incident occurred. The majority concludes that the insurer was obligated under section 10-3-1117(2)(a) to provide a copy of the policy to the plaintiff because it was relevant or potentially relevant to her contemplated claim against the driver. Because the insurer failed to provide a copy of

the policy for over a year, the majority concludes that it is liable to the plaintiff in the amount of $100 per day, calculated from the date the insurer was statutorily obligated to provide a copy of the policy until the day it provided the policy to the plaintiff.

The dissent argues that the insurer's determination that the policy was purchased after the accident relieved it of any obligation to provide the plaintiff with a copy of the policy. Accordingly, the dissent argues there was no violation of the statute.

Court of Appeals No. 24CA1649
City and County of Denver District Court No. 23CV32933
Honorable Kandace C. Gerdes, Judge

Reesa Bohanan,

Plaintiff-Appellant and Cross-Appellee,

v.

Esurance Property & Casualty Insurance Company, a foreign corporation,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE SCHUTZ
Grove, J., concurs
J. Jones, J., dissents

Announced February 5, 2026

The Wilhite Law Firm, Sarah A. Schreiber, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

Hall & Evans, LLC, Daniel J. Bristol, Denver, Colorado, for Defendant-Appellee and Cross-Appellant

Ramos Law, Jessica L. McBryant, Northglenn, Colorado, for Amicus Curiae Colorado Trial Lawyers Association

¶ 1     This appeal arises from Reesa Bohanan's request for copies of any insurance policies issued by defendant, Esurance Property & Casualty Insurance Company (Esurance), that may provide liability coverage for Yeraldy Ugalde Arteaga, the driver who caused an automobile accident with Bohanan.  Although Esurance had issued a policy naming Arteaga as an insured, it refused to produce the policy on the grounds that it had determined the policy was not in effect at the time of the collision.  Bohanan thereafter filed suit against Esurance under section 10-3-1117(3), C.R.S. 2025, seeking an award of statutory damages in the amount of $100 for each day following the thirtieth day after Bohanan's request through the date Esurance ultimately delivered the policy to her.

¶ 2     The district court found Esurance liable for its failure to respond to Bohanan's request.  But the court limited Bohanan's damages award to $600, representing the six days that elapsed between the statutory deadline and the date Esurance disclosed to Bohanan that the policy was not in effect at the time of the accident.

¶ 3 Bohanan appeals the district court's damages award. Esurance cross-appeals the court's liability finding. We affirm the liability finding, reverse the damages award, and remand for an award of the full amount of damages mandated by the statute.

I. Background

¶ 4 On August 31, 2022, at approximately 7:20 a.m. Mountain Daylight Time (MDT)[1], Arteaga drove through a red light and collided with Bohanan's car. The same day, at approximately 9:03 a.m. MDT, a third party obtained an auto insurance policy from Esurance that named Arteaga as an additional insured.

¶ 5 Bohanan retained a lawyer to bring a personal injury claim against Arteaga. On September 7, 2022, her attorney faxed a written notification to the Colorado Division of Insurance, as the registered agent for Esurance, stating that Bohanan was making a claim for personal injuries against Arteaga. As part of this notice, Bohanan requested any Esurance automobile policy information in

_____

[1] While not entirely clear from the record, it appears that the policy was issued at approximately 8:03 a.m. Pacific Standard Time. To alleviate any confusion, we have adjusted and noted that the times referenced in this opinion are in MDT because the accident occurred in that time zone.

connection with Bohanan's claim against Arteaga. The Division of Insurance forwarded the request to Esurance the same day. After receiving the notice, Esurance set up a claim file.

¶ 6 On September 22, 2022, Esurance established a bodily injury reserve on Bohanan's claim for $17,100. On September 30, Esurance noted in Bohanan's claim file that "coverage is in order for [date of loss]." It wasn't until October 11 that Esurance determined that the car accident apparently occurred more than ninety minutes before the insurance policy was purchased. On October 13, thirty-six days after receiving Bohanan's formal request for relevant policy information, Esurance determined that Arteaga wasn't covered by the policy at the time of the crash, noted that a "coverage denial" was appropriate, and closed its reserve. Esurance sent a letter to Bohanan's counsel on October 13 denying coverage for the loss on the grounds that the accident occurred before the policy was issued. The letter did not include a copy of the policy.

¶ 7 The following year, on August 11, 2023, Bohanan sent a letter to Esurance asserting that it had failed to respond to her request for policy information as required by section 10-3-1117(2)(a). Bohanan sent another letter several weeks later. On September 29,

2023, Esurance responded to Bohanan's two letters and, for the first time, provided a copy of the policy. In that letter, Esurance represented that Bohanan's counsel had failed to send the demand letter to its registered agent, a contention that neither party advances on appeal. Nonetheless, Esurance relied on that representation as justification for not paying the $100 per diem statutory penalty for the delayed production.

¶ 8    Bohanan filed suit against Esurance on October 6, 2023. She alleged that Esurance had improperly withheld a copy of the insurance policy and sought monetary damages in the statutory amount of $100 per day for the 356 days between the expiration of the statutory thirty-day deadline and the day Esurance produced a copy of the policy.

¶ 9    The parties filed cross-motions for summary judgment, and the district court ruled in Bohanan's favor on the liability aspect of her claim. The court concluded that Esurance had not complied with the statute requiring it to provide a copy of the policy to Bohanan within thirty days:

> Even if the policy ultimately is irrelevant, that is a secondary consideration to the issue of disclosing such a policy. As the General

> Assembly stated, citizens should be protected, and unnecessary litigation should be prevented . . . . This cannot be achieved without transparency and full disclosure by insurance companies.
>
> The undisputed facts in this case establish that [Bohanan] properly requested policy information from [Esurance], who did not disclose information as required by [section] 10-3-1117.

¶ 10 The district court subsequently held a hearing to determine the proper amount of Bohanan's statutory damages award. The court determined that Bohanan was only entitled to damages for the period between the expiration of thirty days from the initial request (October 7, 2022) and the date that Esurance issued its denial letter (October 13, 2022). Thus, the court entered judgment against Esurance in the amount of $600.

## II.    Analysis

¶ 11 We turn now to the controlling legal principles before addressing the merits of the parties' appellate contentions.

### A.    Liability Determination

¶ 12 We first address Esurance's cross-appeal, in which it contends that the district court improperly determined that Esurance violated section 10-3-1117(2)(a).

### 1.    Standard of Review

¶ 13    We review the grant of summary judgment de novo. *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 7.  "A reviewing court applies the same standards as the [district] court in determining whether summary judgment is warranted." *Timm v. Reitz*, 39 P.3d 1252, 1255 (Colo. App. 2001).  Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*  The moving party bears the burden of establishing that no genuine issues of fact exist, and any doubts in that regard must be resolved against the moving party. *Doe*, ¶ 8.

¶ 14    We also review a district court's statutory interpretation de novo. *Est. of Ross v. Pub. Serv. Co. of Colo.*, 2025 COA 31, ¶ 14 (*cert. granted* Nov. 17, 2025).  "[W]e strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes. . . .  [W]e look first to the plain language of the statute, giving the language its commonly accepted and understood meaning." *Id.* (quoting *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010)).

¶ 15     If the language is clear and unambiguous, we typically do not

examine legislative history or use other rules of statutory

interpretation. *Id.* However, we may consider the General

Assembly's declaration of purpose when interpreting arguably

ambiguous statutory language. § 2-4-203(1)(g), C.R.S. 2025; *see*

*also Welby Gardens v. Adams Cnty. Bd. of Equalization*, 71 P.3d

992, 995 (Colo. 2003) (discussing legislative history despite

concluding that "the plain language of the statute is clear");

*Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 969 (Colo. App.

2011) ("[W]e may consider legislative history when there is

substantial legislative discussion surrounding the passage of a

statute, and the plain language interpretation of a statute is

consistent with legislative intent.").

## 2.     Analysis

¶ 16     The district court concluded that Esurance violated section

10-3-1117(2)(a) when it failed to provide a copy of the insurance

policy to Bohanan within thirty days. The relevant portion of the

statute reads as follows:

> *Each insurer that provides or may provide*
> commercial automobile or personal automobile
> liability insurance coverage to pay all or a

portion of a pending or prospective claim *shall provide* to the claimant or the claimant's attorney via mail, facsimile, or electronic delivery, within thirty calendar days after receiving a written request from the claimant or the claimant's attorney, which request is sent to the insurer's registered agent, a statement setting forth the following information with regard to each known policy of insurance of the named insured, including excess or umbrella insurance, *that is or may be relevant to the claim*:

. . . .

(IV) A copy of the policy.

§ 10-3-1117(2)(a)(IV) (emphasis added). The district court recognized, as we do, that there is no binding appellate court decision interpreting the scope of an insurer's obligation under the statute.

¶ 17    While acknowledging that the decision was not controlling, the district court found persuasive a recent United States District Court for the District of Colorado decision. *See Fogel v. Shelter Mut. Ins. Co.*, 728 F. Supp. 3d 1171, 1177 (D. Colo. 2024).

¶ 18    In *Fogel*, a motorist struck a cyclist; the motorist carried several auto insurance policies. *Id.* at 1173-74. The cyclist requested copies of "each known policy" the motorist carried, and

8

the insurer disclosed some, but not all, of the policies. *Id.* at 1174. The cyclist claimed, among other things, that the insurance company violated the statute when it did not provide copies of all the motorist's insurance policies. *Id.* The insurance company responded that it was not obligated to produce the disputed policies because they did not provide coverage for the subject accident. *Id.* at 1176.

¶ 19 The federal district court reasoned that the statute in question does not define the term "relevant" and that, without explicit guidance from the General Assembly, the common use of that term controls. As the court noted, "relevant" is defined as "having significant and demonstrable bearing on or relation to the matter at hand." Merriam-Webster Dictionary, https://perma.cc/4AYC-3DZG; *see Fogel*, 728 F. Supp. 3d at 1177.[2]

¶ 20 The federal district court concluded that the scope of the statute's disclosure requirement was ambiguous, and, in view of

---

[2] *Fogel v. Shelter Mutual Insurance Company*, 728 F. Supp. 3d 1171, 1177 (D. Colo. 2024), references a prior version of the Merriam-Webster Dictionary definition of "relevant"; we reference the current definition. We perceive no material differences between the two definitions.

that ambiguity, the court referred to the General Assembly's statement of purpose in enacting the statute. *Fogel*, 728 F. Supp. 3d at 1177; *see* § 2-4-203(1)(g), C.R.S. 2025; *see also Peabody Sage Creek Mining, LLC v. Colo. Dep't of Pub. Health & Env't*, 2020 COA 127, ¶ 11 ("[I]f the statute is ambiguous, we turn to other tools of statutory construction to discern the General Assembly's intent, including . . . statements of legislative purpose . . . .").

¶ 21    The court turned to section 10-3-1101(2), C.R.S. 2025, which provides as follows:

> It is in the best interests of the citizens of this state to have transparency in the insurance claims process to further the public policy of encouraging settlement and preventing unnecessary litigation. Claimants and injured parties should fully understand the total amount of insurance coverage available to them. In addition, because payment of uninsured and underinsured motorist benefits covers the difference between the amount of the limits of any legal liability coverage and the amount of the damages sustained, it is important that the citizens of this state have accurate and reliable information about the amount of legal liability coverage available for a claim. Providing information to Colorado residents concerning the amount of liability coverage will:

10

(a) Help Colorado residents evaluate whether their uninsured or underinsured motorist coverage will be triggered; and

(b) Allow an insurer who provides uninsured or underinsured motorist coverage or policies more time to evaluate and place reserves on claims.

¶ 22    The court concluded that the insurer's proposed interpretation of section 10-3-1117 would diminish transparency and encourage litigation, while the cyclist's interpretation would facilitate transparency and discourage litigation. *Fogel*, 728 F. Supp. 3d at 1178-79. Thus, the court concluded that the insurer violated the statute by failing to timely produce the policies. *Id.* at 1179.

¶ 23    As in *Fogel*, the question of coverage under the Esurance policy was not immediately clear. Esurance's internal assessment of the claim initially indicated that "coverage [was] in order" for the date of loss associated with Bohanan's claim, and Esurance established a reserve for her bodily injury claim. It was not until after the thirty-day statutory deadline had expired that Esurance determined the policy was not purchased until after the collision. It apparently took Esurance five weeks to make this determination

11

because it did not notify Bohanan's counsel of the coverage decision until thirty-six days after it received Bohanan's request.

¶ 24    Despite the factual uncertainties regarding whether the policy was in effect at the time of the automobile accident, we conclude that the statute unambiguously required Esurance to provide Bohanan's counsel with a copy of the policy within thirty days of the date its registered agent received the request.

¶ 25    As an initial matter, we reject any implied suggestion that Bohanan's counsel failed to deliver the letter to Esurance's registered agent. Indeed, despite its initial denial letter, on appeal, Esurance seems to concede that the Division of Insurance was acting as its registered agent and that it received the request for the policy on September 7, 2022.

¶ 26    Second, we reject Esurance's argument that the policy did not fall within the statutory mandate that it produce "each known policy of insurance of the named insured . . . that is or may be relevant to the claim." § 10-3-1117(2)(a). Upon receipt of the request for policy information, Esurance promptly determined that it issued a policy on the date of the car accident and that the policy may provide coverage for Bohanan's potential claim. Esurance

investigated the facts of the accident and the circumstances surrounding the issuance of the policy over the course of the next five weeks before ultimately concluding that the policy did not provide coverage.

¶ 27     As evidenced by Esurance's investigation of this incident, when there is a fundamental question of whether a policy provides coverage for a loss, the facts surrounding the claimed loss and the policy's language have significant bearing on the coverage determination.  While Esurance ultimately denied coverage, both the amount of time it took to assess the coverage issue and the initial confusion on both sides as to whether the loss could or would be covered make clear that during the statutory response period the policy "[wa]s or may [have been] relevant to the claim." *Id.*

¶ 28     Finally, we reject Esurance's argument that its unilateral decision that the policy did not provide coverage for the incident excused it from producing the policy.  This rationale would permit an insurer to reject a claimant's request for policy information any time the insurer concludes that no coverage exists, and to do so without ever producing a copy of the policy to the claimant.

¶ 29    This argument is directly contrary to the language used by the General Assembly in section 10-3-1117.  For example, the initial sentence of section 10-3-1117(2)(a) applies the disclosure obligation to each insurer that "provides or may provide . . . automobile liability insurance coverage" to pay all or a portion of the injured party's claim.  The word "provides" encompasses policies that clearly supply coverage, while the phrase "may provide" captures policies that might extend coverage to the claim.  This same nomenclature is carried forward to require the insurer to produce each known policy that "is or may be relevant to the claim."  *Id.* And in between, the General Assembly used the phrase "shall provide" to indicate the insurer's obligation is mandatory.  *Id.*; *see Kidder v. Chaffee Cnty. Bd. of Equalization*, 312 P.3d 1181, 1183 (Colo. App. 2011) ("When the word 'shall' is used in a statute, it ordinarily creates a mandatory obligation.").

¶ 30    If the General Assembly had intended the statutory obligation to extend only to policies that the insurer unilaterally concludes do provide coverage, it would have said that expressly.  *See People v. Market*, 2020 COA 90, ¶ 40 ("If the legislature intends a certain interpretation, 'it certainly [knows] how to say so.'" (quoting *People*

14

*v. Griffin*, 397 P.3d 1086, 1089 (Colo. App. 2011))). But it didn't say that. *See People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 22 ("[W]e do not add words to or subtract words from a statute."). Instead, the General Assembly required the insurer to provide each "known policy . . . that is or may be relevant to the claim." § 10-3-1117(2)(a). This express mandate captures the requested Esurance policy.

¶ 31    Moreover, we reject Esurance's argument that it had no disclosure obligation when the request was received because, in its view, it is now clear that the policy did not provide coverage for the claimed loss.[3] *See id.*; *cf. Reynolds v. Great N. Ins. Co.*, 2023 COA 77, ¶ 13 ("[T]he penalty applies even if the claimant is subsequently found to be entitled to no damages in the underlying automobile accident." (citing § 10-3-1117(5))); *Fogel*, 728 F. Supp. 3d at 1178 n.6 (noting that, at the time of the decision, it was undisputed that the subject policies did not provide coverage, but, at the time of the production request, coverage had not been determined).

---

[3] While Bohanan does not expressly state a position on whether the policy does or does not provide coverage for the claimed loss, we need not decide that issue and therefore do not address it further.

¶ 32    Nor are we persuaded by Esurance's argument that Bohanan's interpretation of section 10-3-1117(2)(a) creates enormous uncertainties and burdens for insurance companies by requiring them to find and produce long-expired policies that have no arguable relevance to the presented claim. We decline Esurance's invitation to imagine the outer parameters of the statute based on facts that are not before us. It is sufficient to resolve this appeal to simply observe that the Esurance policy met the definition of one that "provide[d] or may [have] provide[d]" coverage and "[wa]s or may [have been] relevant to the claim." § 10-3-1117(2)(a).

¶ 33    Finally, even if we were to accept Esurance's argument that the scope of the statute is ambiguous, we conclude that any ambiguity must be interpreted in accordance with the General Assembly's statement of purpose when enacting the statute. *See Peabody*, ¶ 9. Esurance's proposed interpretation would allow insurers to deny — or, at best, delay — the production of potentially relevant policy information and sow doubt rather than promote clarity. It would also perpetuate uncertainty and misunderstanding, which are the fertile breeding grounds of litigation. Such outcomes are directly at odds with the General

16

Assembly's stated purposes when enacting section 10-3-1117. *See* § 10-3-1101(2)(a), (b); *see also Reynolds*, ¶ 12 (section 10-3-1117 was passed to promote transparency in the insurance claims process and accessibility to accurate and reliable information). Thus, the General Assembly's declaration of purpose supports the district court's analysis and our independent analysis of the unambiguous mandate of section 10-3-1117(2)(a).

¶ 34 For these reasons, we affirm that portion of the district court's judgment finding Esurance liable for violating section 10-3-1117(2)(a).

## B. Damages Award

¶ 35 We now turn to Bohanan's claim that the district court improperly calculated the statutory penalty that was the foundation of the damages award.

### 1. Applicable Law

¶ 36 The penalty provision that underlies a damages award for failing to timely produce an insurance policy is set forth in section 10-3-1117(3), which provides, in relevant part, as follows:

> An insurer that violates this section is liable to the requesting claimant for damages in an amount of one hundred dollars per day,

beginning on and including the thirty-first day
following the receipt of the claimant's written
request. The penalty accrues until the insurer
provides the information required by this
section.[4]

¶ 37    As stated previously, we review a district court's statutory

interpretation de novo and first look to the plain meaning of a

statute's language. *Est. of Ross*, ¶ 14.

### 2.    Analysis

¶ 38    The district court determined that Bohanan was entitled to

damages only for the dates between the expiration of thirty days

from the initial request (October 7, 2022) and the date Esurance

issued its denial letter (October 13, 2022). It reasoned that

"[Bohanan] was put on notice six days after the 30-day deadline"

---

[4] As illustrated, the first sentence of section 10-3-1117(3), C.R.S.
2025, refers to the monetary award as "damages," and the second
sentence refers to it as a "penalty." At least one division of this
court has concluded that the statute should be viewed as imposing
a penalty for purposes of determining the applicable statute of
limitations. *See Reynolds v. Great N. Ins. Co.*, 2023 COA 77, ¶ 15
("[S]ection 10-3-1117 is an action for penalties. Therefore, the one-
year statute of limitations for penalties applies."). We need not
weigh in on this question, however, because the applicable
limitations period is not at issue in this case. Our use of the terms
"damages" and "penalty" is driven by the language of section 10-3-
1117(3) and is not intended to reflect any position on the statute of
limitations issue.

18

that the insurance policy had not been issued until after the collision occurred and therefore did not cover the accident. The court further reasoned that the intent of the statute was to provide transparency for consumers and that, by providing the letter denying coverage, Esurance had provided that transparency.

¶ 39 Bohanan contends that section 10-3-1117(3) required the court to award her damages for the entire 356-day period that Esurance failed to produce the policy. Esurance counters that the district court's $600 award expanded the language of section 10-3-1117, specifically contending that the district court read into the statute an "additional requirement of 'transparency.'" Alternatively, Esurance argues that the district court appropriately terminated the per diem penalty once Esurance told Bohanan's counsel that the policy was not in effect at the time of the collision. We are unpersuaded by Esurance's arguments.

¶ 40 As previously discussed, it took Esurance thirty-six days to investigate and determine that the policy was purchased ninety minutes after the collision. Therefore, Esurance's argument — that it should not be obligated to produce a policy that was not in effect at the time of the loss — hinges on a fact that was unknown when

19

Bohanan made her request and ultimately supports Bohanan's argument. As previously explained, the policy was relevant, or at least potentially relevant, to Bohanan's claim. Bohanan's counsel had learned that Esurance issued a policy that named Arteaga as an additional insured. Bohanan's counsel contacted Esurance and its registered agent to obtain the policy so that counsel could evaluate potential coverage for the contemplated claim against Arteaga.

¶ 41     As for Esurance's contention that the district court improperly imposed a "transparency" requirement that does not appear in the statute, the question of whether the policy provided coverage was essential to counsel's assessment of the economics of a potential claim against Arteaga. Thus, production of the policy was central to complying with the letter and intent of section 10-3-1117, as reflected in section 10-3-1101(2)(a). Specifically, unless and until the policy was produced, Bohanan's counsel was unable to make an informed assessment of the coverage issue. This type of uncertainty is what the General Assembly intended section 10-3-1117 to eliminate.

¶ 42    Moreover, Esurance's claim that the district court added a "transparency" requirement to the statute — which is the only argument Esurance presents in its section 10-3-1117(3) analysis — focuses not on the damages award mandated by the statute but, rather, on its liability argument under section 10-3-1117(2)(a). Subsection (3) says nothing about transparency issues. Thus, Esurance's lone damages argument is untethered to the controlling statutory language.

¶ 43    In any event, Esurance fails to address the General Assembly's stated objective of incentivizing the timely production of polices that are or may be relevant to a claim through the imposition of the daily penalty. We are not allowed to disregard that manifest purpose. *See Reid v. Berkowitz*, 2013 COA 110M, ¶ 38 ("[W]e are not at liberty to ignore the General Assembly's directive . . . .").

¶ 44    Under section 10-3-1117(3), an insurer that violates the requirement to provide a copy of the policy within thirty days "is liable to the requesting claimant for damages in an amount of one hundred dollars per day, beginning on and including the thirty-first day following the receipt of the claimant's written request." From there, it is a matter of simple mathematics. Bohanan filed her

21

request for a copy of the insurance policy on September 7, 2022. Thirty days elapsed on October 7, 2022. On September 29, 2023 — 356 days later — Esurance finally provided a copy of the policy to Bohanan. At $100 per day, the statutorily mandated damages award equals $35,600.

## III.  Disposition

¶ 45    We affirm the district court's finding that Esurance violated section 10-3-1117(2)(a), reverse the damages award, and remand with instructions that the district court enter a judgment awarding Bohanan damages in the amount $35,600.[5]

JUDGE GROVE concurs.

JUDGE J. JONES dissents.

---

[5] Neither party raises the issue of attorney fees on appeal. We therefore do not address that issue. We do note, however, that Bohanan filed a motion for an award of attorney fees in the district court, which the court declined to rule on until the completion of this appeal. On remand, the district court may address Bohanan's request for attorney fees. *See* § 10-3-1117(3) ("An insurer that fails to make a disclosure required by this section is also responsible for attorney fees and costs incurred by a claimant in enforcing the penalty.").

JUDGE J. JONES, dissenting.

¶ 46    The majority holds that, under section 10-3-1117(2)(a), C.R.S. 2025, defendant, Esurance Property & Casualty Insurance Company, had a duty to provide to plaintiff, Reesa Bohanan, an insurance policy that wasn't in effect at the time of the automobile accident giving rise to Bohanan's potential claim against the other driver.  Because I don't agree with the majority that the language of the statute supports that conclusion, I respectfully dissent.

¶ 47    As the majority notes, the relevant part of the statute reads as follows:

> Each insurer that *provides or may provide* commercial automobile or personal automobile liability insurance coverage to pay all or a portion of a pending or prospective claim shall provide to the claimant or the claimant's attorney via mail, facsimile, or electronic delivery, within thirty calendar days after receiving a written request from the claimant or the claimant's attorney, which request is sent to the insurer's registered agent, a statement setting forth the following information with regard to each known policy of insurance of the named insured, including excess or umbrella insurance, *that is or may be relevant* to the claim:
>
> . . . .
>
> (IV) A copy of the policy.

23

§ 10-3-1117(2)(a)(IV) (emphasis added). Bohanan argues that the policy "is or may be relevant" to her claim against the other driver. The majority agrees with Bohanan, holding that the policy was one that, when requested by her attorney, may have been relevant to her claim.

¶ 48    In so holding, the majority fails to afford the word "may," as twice used in the statute ("may provide" and "may be relevant"), its plain and ordinary meaning. *See Rios de Martinez v. Landaverde*, 2024 COA 115, ¶ 11 (in interpreting a statute, we begin by giving terms their plain and ordinary meanings). As used in this grammatical and substantive context, the word "may" means "in some degree likely," Webster's Third New International Dictionary 1396 (2002), or "[t]o be a possibility," Black's Law Dictionary 1169 (12th ed. 2024).

¶ 49    As I see it, there is no degree of likelihood or possibility that an insurance policy that wasn't in effect at the time of the incident giving rise to a claim could provide coverage. Bohanan doesn't seem to argue otherwise, and the majority doesn't seem to dispute

this proposition.[1]  Likewise, such a policy isn't "relevant" to such a

claim, nor is it possibly relevant.

> [A] liability insurance policy exists for the
> single purpose of satisfying the liability *that it
> covers.*  It has no other function and no other
> value.  Litigation is a practical business.  The
> litigant sues to recover money and is not
> interested in a paper judgment that cannot be
> collected.  The presence or absence of liability
> insurance is frequently the controlling factor in
> determining the manner in which a case is
> prepared for trial.

*Lucas v. Dist. Ct.*, 345 P.2d 1064, 1068 (Colo. 1959) (quoting *People

ex rel. Terry v. Fisher,* 145 N.E.2d 588, 593 (Ill. 1957); emphasis

added).  Section 10-3-1117 appears to acknowledge this reality, as

reflected in the declaration of purpose contained in section 10-3-

1101, C.R.S. 2025.  But a policy that wasn't in effect at the time of

---

[1] Bohanan has never argued that the policy in question was in effect at the time of the accident.  Nor could she.  The policy says that it applies only to accidents and losses that occur after the latter of "[t]he effective date and time shown on the" declarations page or "[t]he time the policy was bought."  The declarations page says, "This policy is effective at 12:01 AM on the date shown or the time the policy was purchased, whichever is later."  The policy was purchased at 9:03 a.m. (Mountain Daylight Time) on August 31, 2022.  The accident occurred at 7:20 a.m. (Mountain Daylight Time) that day.

25

the incident giving rise to the claim has no relevance to the case and, just as importantly, no potential relevance to the case.

¶ 50    Nor would imposing a duty on an insurer to provide such a policy serve the purposes motivating the disclosure requirement. Knowledge of such a policy will not "encourag[e] settlement" or "prevent[] unnecessary litigation." § 10-3-1101(2). It will not help claimants and injured parties "fully understand the total amount of insurance coverage *available* to them." *Id.* (emphasis added). It will not "[h]elp Colorado residents evaluate whether their uninsured or underinsured motorist coverage will be triggered." *Id.* And it will not "[a]llow an insurer who provides uninsured or underinsured motorist coverage or policies more time to evaluate and place reserves on claims." *Id.* Rather, such a policy is, in effect, no policy at all — at least when it comes to the purposes served by the statute.

¶ 51    *Fogel v. Shelter Mutual Insurance Co.*, 728 F. Supp. 3d 1171 (D. Colo. 2024), on which both Bohanan and the majority rely, actually supports a conclusion contrary to that reached by the majority in this case. In *Fogel*, there were four insurance policies at issue, all of which were in effect at the time of the accident and all

26

of which identified the at-fault driver as a named insured or additional insured. *Id.* at 1173. The court held that the insurance company was required by section 10-3-1117 to disclose all the policies, not just the one the insurer conceded applied. It so held "because it was at least *plausible* that one or more of the policies could have a significant and demonstrable bearing on the claim at hand." *Fogel*, 728 F. Supp. 3d at 1178 (emphasis added). In this case, however, the policy in question couldn't *plausibly* have had any such bearing.

¶ 52 True, as the majority points out, Esurance initially didn't know that the policy didn't apply. But that wasn't a function of any uncertainty about the type or amount of coverage provided by the policy, or any ambiguity in the policy's language, but of a lack of knowledge of the time the accident occurred. I don't see how the lack of such knowledge on the insurer's part makes a policy any more relevant or possibly relevant to the claim. To hold otherwise penalizes — literally — an insurer for failing to know from the outset a fact negating the possible existence of any potentially applicable policy — a fact in this case of which the insurer had no reason to know until it conducted an investigation. I don't think

imposing liability in such circumstances comports with the General Assembly's intent.

¶ 53 In sum, I would hold that a policy "may be relevant" only when there is a plausible argument that the policy provides coverage. To hold otherwise, as the majority does, imposes virtually boundless obligations on insurance companies to disclose policies that have no conceivable possibility of providing coverage: All that's necessary to impose liability under the statute, in the majority's view, is a request to which the insurer doesn't respond and the existence of a policy that at any point in time may have covered the insured. Again, I don't think that's what the General Assembly had in mind.

¶ 54 As I believe this case demonstrates, section 10-3-1117 could stand some clarification by the General Assembly. But barring that, I don't think the statute and its motivating purposes should be read so broadly as to create satellite litigation divorced from any real world harm to any of the parties in the underlying dispute.

¶ 55 Because I would conclude that Esurance isn't liable under section 10-3-1117(2)(a), I don't address whether the district court erred in calculating damages under the statute.