25CA1843 Peo in Interest of JG 03-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1843
Douglas County District Court No. 21JV160
Honorable Ryan J. Stuart, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.G., a Child,

and Concerning K.G.,

Appellant,

and

J.G.,

Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

---

Jeffrey A. Garcia, County Attorney, Erinn E. Walz, Assistant County Attorney, Castle Rock, Colorado, for Appellee The People of the State of Colorado

Debra W. Dodd, Guardian Ad Litem

Genevieve Manco, Office of Respondent Parents' Counsel, Thornton, Colorado, for Appellant

Joel M. Pratt, Office of Respondent Parents' Counsel, Colorado Springs, Colorado, for Appellee J.G.

¶ 1     In this dependency and neglect proceeding, K.G. (mother) appeals the portion of the juvenile court's judgment allocating parental responsibilities for five-year-old J.G. (the child) and awarding sole residential custody to J.G. (father).  We affirm.

## I.     Background

¶ 2     In October 2021, the Douglas County Department of Human Services (the Department) filed a petition in dependency and neglect based on concerns that the child had been abandoned by father and was exposed to domestic violence and substance use in mother's care.  A magistrate granted temporary legal custody of the child to kin-like placements with the Department's protective supervision.

¶ 3     Mother admitted the petition, and the magistrate adjudicated the child dependent and neglected.  The magistrate adopted a treatment plan for mother.

¶ 4     Father, who lives in Michigan, didn't initially have contact with mother or the child.  But a month after the Department filed the petition, father requested that the child be placed with his relative.  Later, the court adjudicated the child dependent and neglected with

1

regard to father and ordered a treatment plan for him. A year later, father requested placement of the child with him in Michigan.

¶ 5 In August 2023, the Department moved to terminate mother's and father's parent-child legal relationships with the child. The court granted the Department's request for a continuance to consider father's request for placement of the child in Michigan and to reevaluate the child's kin-like placement. In the meantime, the court granted father's request to allow the child to travel to Michigan for a thirty-day visit. After holding a contested placement hearing, the court granted the Department legal custody of the child; the Department allowed her to remain with father. The termination hearing was then vacated.

¶ 6 In August 2024, father moved for an allocation of parental responsibilities (APR). After several continuances, the court held an APR hearing and allocated parental responsibilities. The court awarded father sole residential custody and sole decision-making responsibility. The court allocated mother virtual parenting time twice per week and four hours of supervised in-person parenting time.

## II.    Due Process

¶ 7      Mother argues that the juvenile court violated her due process rights in several ways by denying her request for a continuance and proceeding to award sole residential custody of the child to father without her appearance or testimony.

### A.    Mother Had Notice

¶ 8      First, mother argues that the juvenile court violated her right to procedural due process when it allegedly failed to notify her of the APR hearing.  But the record shows that mother was present when the court continued the APR hearing to the new date.  Moreover, the court's written order from that hearing included an admonishment that the parties should participate in person in the half-day contested APR hearing on the new date.  Mother doesn't provide an explanation — nor are we aware of any — for why this doesn't constitute adequate notice.

### B.    Unpreserved Claim

¶ 9      Second, mother raises an as-applied substantive due process claim, arguing that the juvenile court erred by holding the APR hearing without her.  Awarding father sole residential custody under these circumstances, she argues, caused her actual prejudice

by denying her the opportunity to parent the child. We decline to address this issue because mother failed to raise it before the juvenile court.

¶ 10    While divisions of this court are divided on addressing unpreserved constitutional arguments in dependency and neglect cases, *see People in Interest of M.B.*, 2020 COA 13, ¶ 34, the general rule in civil cases is that parties may not raise for the first time on appeal "[a]rguments never presented to, considered by, or ruled upon by a [district] court," *Colo. Div. of Ins. v. Statewide Bonding, Inc.*, 2022 COA 67, ¶ 73. And while we don't require talismanic language to preserve an issue, a party must have presented the "sum and substance" of the argument to the district court. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50 (citation omitted).

¶ 11    The sum and substance of mother's argument on appeal — that the juvenile court denied her due process and violated her "fundamental liberty interest in the care, custody, and control of [her] child" by denying her motion for a continuance and proceeding with the APR hearing in her absence — wasn't presented to the juvenile court. Mother's references to her trial counsel's

explanation that mother "really wanted to be present at the hearing," and that counsel "not[ed] the seriousness of [the] hearing," were insufficient to place the juvenile court on notice that mother's counsel was asserting a constitutional claim. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 44 & n.3 (holding as-applied constitutional claim wasn't preserved for appeal because appellant's argument to the district court didn't raise a constitutional issue), *aff'd*, 2018 CO 39.

¶ 12 Moreover, while mother argues that she was "substantially prejudiced" by the child's placement, she doesn't argue that this prejudice amounted to a miscarriage of justice that requires review of her unpreserved claim. *See People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996) (In some "limited situations[,]" "an error by the trial court, not otherwise properly preserved for appeal, should be characterized as fundamental or one causing a miscarriage of justice, thereby allowing us to consider it on appeal.").

¶ 13 We also can't say that the juvenile court's alleged error constituted a miscarriage of justice. Mother cites *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), a case involving the termination

of parental rights, to argue that she needed to be present at the APR hearing to prevent "the irretrievable destruction of [her] family life." We disagree with mother that this case "posed a similar destruction of [m]other's family life" as discussed in *Santosky*. While the child's out-of-state placement undoubtedly made exercising her parenting time more challenging, mother's "fundamental liberty interest[]" "in the care, custody, and control of [her] child[]" — the liberty interest articulated in *Troxel v. Granville* that is protected by substantive due process — wasn't at risk. 530 U.S. 57, 65 (2000). In this APR proceeding, mother's parental rights weren't terminated. *See L.L. v. People*, 10 P.3d 1271, 1276-78 (Colo. 2000) (recognizing that when the termination of parental rights isn't being pursued, the parent is afforded lesser due process protections); *People in Interest of L.B.*, 254 P.3d 1203, 1206 (Colo. App. 2011) (same). Thus, we need not take up mother's unpreserved claim to prevent a "miscarriage of justice." *M.B.*, ¶ 33 (citation omitted).

### III.   Motion to Continue

¶ 14     To the extent that mother argues that the juvenile court abused its discretion by denying the motion to continue, we aren't persuaded.

## A. Relevant Law and Standard of Review

¶ 15    The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2025. Thus, when ruling on a motion to continue, the juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency." *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.

¶ 16    We review a juvenile court's denial of a motion to continue for an abuse of discretion. *People in Interest of E.B.*, 2022 CO 55, ¶ 14. A court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law." *Id.* "The totality of the circumstances is relevant when determining whether the trial court committed an abuse of discretion by denying a continuance." *Id.* (citation omitted).

## B. Analysis

¶ 17    We understand mother to argue that the juvenile court relied on evidence not supported by the record — that mother had "a pattern" of failing to appear in court — when it denied her

continuance motion. Mother misstates the court's findings. The court found, after reviewing mother's court file, that mother had exhibited "a pattern . . . *not necessarily* in court, but throughout the treatment plan, [of] not showing up to things." (Emphasis added.) The record supports these findings. In the years leading up to the APR hearing, mother left treatment against medical advice, was inconsistent with her urinalysis testing, missed parenting time with the child, and didn't attend meetings with the case professionals.

¶ 18    To the extent that mother argues that the court didn't credit her appropriately for appearing at prior hearings, we disagree. The court specifically noted that its finding of a pattern by mother of "not showing up to things" did *not* necessarily include her appearances in court. To the extent mother would like us to fault the court for not weighing mother's court appearances more favorably, we can't do so. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62 ("[I]t is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court."). Because the court made its finding with record support, we perceive no abuse of discretion.

¶ 19   Mother also argues that the juvenile court failed to conduct the proper balancing test before denying her motion to continue. Again, we disagree. The court heard an objection from the child's guardian ad litem, who noted the previous delays in the case and that the child "deserved permanency." *See In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (appellate court may presume that the district court considered all the evidence and argument presented, even if the order doesn't expressly recite such evidence). The court also explicitly considered that the case had already been continued at mother's request at the last hearing — a finding that enjoys record support. Most important, the court considered the child's best interests. *See* § 19-1-102(1)(c).

¶ 20   Given this record showing that the court balanced the "need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency," *R.J.B.*, ¶ 11, we perceive no abuse of discretion.

### IV.   Disposition

¶ 21   We affirm the judgment.

JUDGE FOX and JUDGE KUHN concur.