25CA2063 Peo in Interest of EAB 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2063
Larimer County District Court No. 24JV30093
Honorable Ann Gail Meinster, Judge

The People of the State of Colorado,

Appellee,

In the Interest of E.A.B., a Child,

and Concerning J.L.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

Ben Pearlman, County Attorney, Jeanne Banghart, Deputy County Attorney, Cheryl Koh-Sicotte, Assistant County Attorney, Boulder, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1	J.L. (mother) appeals the judgment terminating her parent-child legal relationship with E.A.B. (the child). We affirm.

## I.	Background

¶ 2	The Larimer County Department of Human Services filed a petition in dependency or neglect regarding the then-newborn child because mother reported using fentanyl and methamphetamine routinely during her pregnancy, including on the day of the child's birth.

¶ 3	Mother entered an admission, and the juvenile court adjudicated the child dependent and neglected. The court then adopted a treatment plan for mother requiring her to (1) address any mental health and substance issues by, among other things, participating in an integrated assessment, following treatment recommendations, and submitting to sobriety monitoring; (2) maintain contact with the Department and other professionals; (3) enroll in a trauma-informed parent education program; and (4) establish a relationship with the child by participating in family time.

1

¶ 4     The Boulder County Department of Human Services later moved to terminate mother's parental rights.[1]  The court terminated mother's parental rights nearly fourteen months after the petition was filed, following a two-day hearing.

## II.     Procedural Due Process

¶ 5     Mother first contends that she was denied her due process right to a fundamentally fair proceeding because the juvenile court didn't issue an order adopting her treatment plan until two and a half months before the termination hearing and after the Department had moved to terminate her parental rights.  We disagree.

¶ 6     Mother raises her due process claim for the first time on appeal.  We ordinarily don't review issues that weren't raised to the juvenile court.  *People in Interest of M.B.*, 2020 COA 13, ¶ 14.  There is a narrow exception for errors that result in "manifest injustice." *Id.* at ¶¶ 20, 24.  But that exception applies only in "limited situations," such as where the error "negates the validity of the

---

[1] The Boulder County Attorney's Office substituted for the Larimer County Attorney's Office, and the Boulder County Department of Human Services took over supervision of the case, after the child's father threatened professionals involved in the case.

judgment entered." *People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996). Mother doesn't specifically invoke the "miscarriage of justice" exception and argues only that "her rights were substantially affected" because the court didn't enter a written order adopting mother's treatment plan until the Department moved to terminate her parental rights. Without more, such an argument doesn't satisfy the "miscarriage of justice" exception. *See M.B.*, ¶ 33 (declining to consider unpreserved due process argument in termination proceeding).

¶ 7 Nevertheless, there was no due process violation. Due process entitles parents to "fundamentally fair procedures" before their parental rights are terminated. *People in Interest of E.B.*, 2022 CO 55, ¶ 16 (citation omitted). Those procedures include "notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 18.

¶ 8 The record refutes mother's argument regarding when the court adopted her treatment plan. Two months after the Department filed the petition, the parties stipulated to a treatment

plan and jointly asked the juvenile court to adopt it "as the dispositional order for [mother]."  The county attorney, guardian ad litem, mother, and mother's counsel signed the stipulation.  On the same day that the stipulation was filed, mother's counsel told the court that mother had entered an admission and agreed to the treatment plan at a hearing held over a month earlier, and that the parties had simply "memorialized it with this stipulation."  The court had orally "adopt[ed] the treatment plan" at the earlier hearing.

¶ 9 After the stipulation was filed, the court asked mother if she had reviewed the treatment plan, felt that she understood what was expected of her, and if she had any questions about it.  After mother confirmed that she was "okay with the treatment plan" and had no questions, the court reaffirmed that the treatment plan was "an order of the court."

¶ 10 Although the court didn't enter a written order confirming its adoption of the treatment plan until nearly nine months later, mother doesn't cite any authority requiring the court to enter a written order before its oral order adopting a treatment plan becomes effective — particularly in the absence of any objection —

4

and mother never objected to the lack of a written order.  Nor did she ever assert that the court hadn't adopted the treatment plan in a timely manner.  And mother never indicated, nor does she do so on appeal, that she didn't understand what her treatment plan required.

¶ 11  Thus, we conclude that mother has failed to show a miscarriage of justice that would require us to review her unpreserved due process claim.  *M.B.*, ¶ 33.  And even if we were to consider her argument on the merits, we would conclude that she has failed to show a due process violation.

### III.  Fitness Within a Reasonable Time

¶ 12  Next, mother argues that the juvenile court erred by terminating the parent-child legal relationship without giving her sufficient time to comply with the treatment plan.  We discern no error.

### A.  Applicable Law and Standard of Review

¶ 13  A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent hasn't reasonably complied with an appropriate treatment plan or the plan

has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 14    The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required the government's intervention. *K.D. v. People,* 139 P.3d 695, 699 (Colo. 2006).  A treatment plan is successful if it either renders a parent fit or corrects the conduct or condition that led to state intervention.  *People in Interest of C.A.K.,* 652 P.2d 603, 611 (Colo. 1982).

¶ 15    When a child is under six years old, as in this case, the juvenile court must also consider the statutory expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible.  *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.  In an EPP case, no parent shall be found to be in reasonable compliance with, or have been successful at, a treatment plan if the parent (1) exhibits the same problems addressed in the treatment plan without adequate improvement and (2) is unable or unwilling to provide nurturing and safe parenting adequate to meet the child's

6

physical, emotional, and mental health needs and conditions.
§ 19-3-604(1)(c)(I)(B).

¶ 16    An unfit parent is one whose conduct or condition renders the
parent unable or unwilling to give a child reasonable parental care.
*People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007).
Reasonable parental care requires, at a minimum, that the parent
provide nurturing and safe parenting sufficient to meet the child's
physical, emotional, and mental health needs and conditions.
*People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 17    Whether a juvenile court properly terminated parental rights
presents a mixed question of fact and law because it involves
application of the termination statute to evidentiary facts.  *A.M.*,
¶ 15.  We review the court's factual findings for clear error, but we
review de novo its legal conclusions based on those facts.  *People in
Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  The credibility of the
witnesses; sufficiency, probative value, and weight of the evidence;
and the inferences and conclusions drawn from the evidence are
within the juvenile court's discretion.  *People in Interest of A.J.L.*,
243 P.3d 244, 249-50 (Colo. 2010).

## B. Analysis

¶ 18 Mother argues that she was only given four months to comply with the treatment plan, and that if she was given what she contends is a reasonable amount of time, she would have been successful. But, as discussed above, the court adopted a treatment plan, at the latest, over eleven months before the termination hearing.

¶ 19 The juvenile court found that mother didn't comply with the treatment plan "in any significant respect," and that mother had not addressed her "long and very, very serious history of substance use." The court concluded that mother wouldn't be "be available and engaged in treatment," or be able to meet the child's needs "in anything remotely resembling a reasonable period of time."

¶ 20 The record supports the court's findings. The first caseworker testified that mother struggled with her sobriety and that she didn't engage in services or communicate consistently with professionals. The caseworker opined that "concerns for [mother] gr[e]w over the course of this case." When the first caseworker transferred the case to the second caseworker, mother hadn't completed any treatment or submitted any urinalysis tests.

¶ 21 The second caseworker testified that mother didn't comply with any treatment plan objectives. For example, mother didn't complete an integrated assessment or a parenting class, didn't submit any urinalysis tests, and had three active warrants for her arrest. The caseworker referred mother to a residential treatment program, but mother left the program on the day of her intake and never tried to reengage in treatment. The caseworker testified that mother "disappeared" and that they "weren't able to work together at all." And mother didn't appear for either day of the termination hearing.

¶ 22 Mother also didn't attend family time on a consistent basis. The therapeutic family time supervisor testified that mother attended only nine of the scheduled thirty-eight family time visits. And when mother attended family time, the supervisor was concerned that mother was intoxicated because she "tend[ed] to nod off and ha[d] a hard time staying awake."

¶ 23 Ultimately, the second caseworker opined that mother hadn't complied with her treatment plan and — noting that this was an EPP case — that a reasonable time for reunification had elapsed.

¶ 24 Accordingly, given this record, we discern no error in the court's findings that mother was unfit and unlikely to become fit within a reasonable time.

## IV. Disposition

¶ 25 The judgment is affirmed.

JUDGE TOW and JUDGE LIPINSKY concur.